Case 0:23-cv-62361-JEM   Document 1-2   Entered on FLSD Docket 12/16/2022   Page 1 of 97

EXHIBIT B

21-586/aga/trt

**IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: 22-CA-009793**

MURIEL BRYAN,

              Plaintiff,

vs.

CITY OF DANIA BEACH, and
DANIA BEACH COMMUNITY
REDEVELOPMENT AGENCY,

              Defendants.

_____/


**<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
WITH PREJUDICE WITH INCORPORATED MEMORANDUM OF LAW</u>**

COMES NOW Defendants CITY OF DANIA BEACH (the "City") and DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY (the "CRA") (collectively, "Defendants"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Florida Rule of Civil Procedure 1.140(b), hereby move this Court for entry of an order dismissing Plaintiff's, MURIEL BRYAN ("Bryan") First Amended Complaint ("FAC") with prejudice and, in support thereof, state as follows:

## INTRODUCTION

On July 5, 2022, Plaintiff filed her Complaint against the City wherein she attempted to assert claims for discrimination based on her purported "disability and status as a pregnant female" pursuant to the Pregnancy Discrimination Act ("PDA") as incorporated into Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA") and the Family Medical Leave Act ("FMLA"). *Exhibit A, First Amended Complaint*. On September 2, 2022, the City moved to dismiss the initial complaint because the Plaintiff was employed by a separate entity (the City of Dania Beach Community Redevelopment Agency ("CRA")) and Plaintiff failed to allege the necessary elements for each stated claim against the City. Specifically, the First Amended Complaint lacked allegations establishing Plaintiff's pregnancy was a disability or was perceived as a disability and lacked the requisite allegations pertaining to Plaintiff's FMLA claims. On November 22, 2022, Plaintiff filed the Amended Complaint, adding the CRA as a defendant, along with revising some allegations stated in first-person, but without any revisions to the substance generally alleged or provided in each stated count. Plaintiff did not incorporate any substantive revisions to the allegations presented in the initial complaint allegations against the City. Also, Plaintiff reproduced the same, deficient claims against the CRA.

As argued in greater detail below, Plaintiff's First Amended Complaint ("FAC") should be dismissed with prejudice. First, the City should be dismissed as a party defendant because Plaintiff

was not an employee of the City at the time her position was eliminated. Second, the CRA should be dismissed as a party defendant because Plaintiff failed to exhaust the presuit requirements against the CRA, and is therefore precluded from bringing these claims against the CRA. Third, Plaintiff's FAC should be dismissed in its entirety for failure to sufficiently allege the necessary elements of <u>each</u> claim—though these deficiencies were previously identified by the City in its previously filed Motion to Dismiss.

As in the initial complaint, Plaintiff completely fails to allege the requisite threshold-number of employees employed by the City or the CRA to bring the Defendants within the definition of an "employer" within the meaning of the employment discrimination claims asserted under Title VII, the FCRA or the FMLA. As to Plaintiff's claims of pregnancy discrimination under federal and Florida statutes, Plaintiff has failed to allege that she was qualified for the position from which she was terminated and similarly failed to identify an employee who was not pregnant who received more favorable treatment than Plaintiff. As to the claims of disability discrimination, Plaintiff does not allege that her pregnancy was a disability or was perceived as a disability, nor does Plaintiff allege that she suffered from any conditions related to her pregnancy that could have rendered her pregnancy as disabling. As in the original complaint, Plaintiff fails to allege that she suffered from a serious health condition related to her pregnancy; or that she alerted the City or the CRA of her intent to take FMLA leave based on a serious health condition. Furthermore, Plaintiff fails to allege any facts to support her claim of FMLA retaliation. Finally, Plaintiff has failed to allege that she has satisfied the pre-requisites for filing such a claim against the City and the CRA.

## <u>MEMORANDUM OF LAW</u>

### A.    *Standard of Review*[1]

### i.    *Federal Standard*

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and while the rule does not require "detailed factual allegations[,]" the factual allegations set forth are required to "raise a right to belief above the speculative level[.]" *Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (*quoting Twombly*, 550 U.S. at 570). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 679.

When considering a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *Rule 12(b)(6), Fed. R. Civ. P.; Jackson v. Okaloosa County,* 21 F. 3d 1531, 1534 (11th Cir. 1994). Although factual allegations must be accepted as true, for the purposes of the motion, a court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F. Supp. 906, 910 (S.D. Fla. 1993). Moreover, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged or that a defendant has violated laws in ways that have not been alleged. *See Beck v. Interstate Brands Corp.,* 953 F. 2d 1275, 1276 (11th Cir. 1992). Likewise, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *See B.H. Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed 2d 209 (1986). Although the federal rules ascribe to liberality in pleadings, bald assertions and conclusions of law will not defeat a properly supported motion

---

[1]    City and CRA have sought removal of this action to federal court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446(b)(3).

to dismiss. *See Leeds v. Meltz,* 85 F. 3d 51, 53 (2d Cir. 1996). Moreover, a court may dismiss claims with prejudice when another attempt to amend the complaint would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

### ii.    *Florida Standard*

One of the basic purposes of a motion to dismiss is to test the overall sufficiency of the complaint and to determine whether it states a claim upon which relief can be granted. *See Augustine v. Southern Bell*, 91 So. 2d 30 (Fla. 1956). In evaluating a motion to dismiss, the Court must accept the allegations as true, view the allegations in light most favorable to the plaintiff, and decide only questions of law. *See Elmore v. Florida Power & Light Co.*, 760 So. 2d 968, 971 (Fla. 4th DCA 2000). Additionally, the Court's consideration must be limited to the four corners of the complaint. *See Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204 (Fla. 3d DCA 2003); *see also Santiago v. Mauna Loa Investments, LLC*, 189 So. 3d 752, 756 (Fla. 2016); *Marshall v. Amerisvs, Inc.*, 943 So. 2d 276 (Fla. 3d DCA 2006). "In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." *Garnac Grain Co., Inc. v. Mejia,* 962 So. 2d 408, 410 (Fla. 4th DCA 2007). A motion to dismiss does not admit allegations that are contradicted by the record or by matters of which the court may take judicial notice. *Byrne Realty Co. v. South Florida Farms Co.,* 89 So. 318, 327 (Fla. 1921); *Mills v. Ball,* 372 So. 2d 497, 498 (Fla. 1st DCA 1979).

When exhibits are attached to a complaint, the contents of the exhibits control over the allegations of the complaint and may be a basis for a motion to dismiss. *See BAC Funding Consortium, Inc. ISAOA/ATIMA v. Jean-Jacques*, 28 So. 3d 936, 938 (Fla. 2d DCA 2010); *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 401 (Fla. 2d DCA 2000). "Where complaint allegations are contradicted by exhibits attached to the complaint, the plain meaning of the exhibits

control and may be the basis for a motion to dismiss." *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 401 (Fla. 2d DCA 2000

Moreover, a court may dismiss claims with prejudice when another attempt to amend the complaint would be futile. *McCray v. Bellsouth Telecommunications, Inc.*, 213 So. 3d 938, 939 (Fla. 4th DCA 2017).

**B.     The City and the CRA, as separate entities, are not liable for Plaintiff's claims**

The FCRA makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status. *See* § 760.10, Fla. Stat. Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The FMLA makes it unlawful for any employer to interfere with any rights provided by FMLA or discriminate against any individual for opposing any practice made unlawful by the FMLA. *See* 29 U.S.C. § 2615. Therefore, in order for the City to be liable for Plaintiff's discrimination claims pursuant to Title VII, FCRA, and FMLA, the City must be Plaintiff's employer.

As of September 23, 2020, Plaintiff was employed by the Dania Beach Community Redevelopment Agency ("CRA") – *not the City* - as an Economic Development Manager II. *Exhibit B, Affidavit of Michael Chen*, at ¶ 8. The CRA is a separate legal entity from the City of Dania Beach. *Ex. B,* at ¶¶ 2-7. The CRA was established in 2002 by the City and Broward County for the development of specific areas within the City. *Ex. B,* at ¶ 4, "Exhibit 1". Pursuant to Chapter 163, Part III, Florida Statutes, the CRA is responsible for the elimination of slum and blight within the Community Redevelopment Area. *Ex. B,* at ¶ 5. The CRA has its own Taxpayer Identification

Number. *Ex. B,* at ¶ 6, "Exhibit 2". The CRA entered into an Interlocal Cooperation Agreement with the City and Broward County wherein the CRA and the City agreed that "[t]he CRA and the City shall be responsible solely for the negligence, respectively, of the CRA and the City's agents, servants and employees." *Ex. B,* at "Exhibit 1" (emphasis added).

In November 2020, Michael Chen became the CRA's Executive Director and Plaintiff worked as a probationary employee for the CRA as the CRA's Economic Development Manager II under Mr. Chen's supervision. *Ex. A,* at ¶ 11; *Ex. B,* at ¶¶ 8-9. Shortly after starting his new position as CRA Executive Director, Mr. Chen reviewed the CRA plan to analyze whether the goals and objectives of the CRA plan were being met and, as part of this analysis, on February 8, 2021, Mr. Chen proposed, in part, eliminating the Economic Development Manager II position which Plaintiff held as a probationary employee of the CRA. *Ex. B,* at ¶ 10.  On June 11, 2021, Mr. Chen notified Plaintiff of his decision, as the Executive Director of the CRA, to eliminate Plaintiff's position effective June 11, 2021. *Ex. B,* at "Exhibit 3".  The CRA employed a total of nine (9) employees.  *Ex. B,* at ¶ 12.

Plaintiff admits in her Amended Complaint that she worked under the supervision of Michael Chen and that she worked as the Economic Development Manager. *Ex. A,* at ¶¶ 11-12, 14. Mr. Chen was the Executive Director of the CRA at the time that Plaintiff worked as the Economic Development Manager II for the CRA. Thus, because Plaintiff was an employee of the CRA, she cannot sue the City (who was not her employer) and hold the City liable for any alleged violation of the FCRA, Title VII, or FMLA. Still, the CRA cannot be held liable for any violation of the FCRA, Title VII or FMLA because the CRA does not employ the requisite number of employees to be an "employer" as defined by the FCRA, Title VII or FMLA. Accordingly, the City should be dismissed as a party defendant, with prejudice because the City was not Plaintiff's

employer and the CRA should be dismissed as a party defendant with prejudice because the CRA

does not employ enough employees to be an employer under the FCRA, Title VII or the FMLA.

> **C.** **_Plaintiff does not allege that all administrative remedies against the City and the CRA have been met as required by Title VII [COUNTS I, II, VII, VIII] and Florida Civil Rights Act [COUNTS III, IV, IX, X]_**
>
> Before a plaintiff files a Title VII action, he or she must exhaust all administrative remedies by filing a charge of discrimination with the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). In order to exhaust his or her administrative remedies, a plaintiff must include the factual bases for all of his or her Title VII claims in the charge. *See Houston v. Army Fleet Servs., L.L.C.*, 509 F.Supp.2d 1033, 1043 (M.D. Ala. 2007). The Florida Civil Rights Act (FCRA) contains this same exhaustion requirement regarding retaliation claims. See § 760.11, Fla. Stat. (2011); *Sheridan v. State, Dep't of Health*, 182 So.3d 787, 789 (Fla. 1st DCA 2016); *Carter v. Health Mgmt. Assocs.*, 989 So.2d 1258, 1262 (Fla. 2nd DCA 2008).

*Buade v. Terra Grp., LLC*, 259 So. 3d 219, 222 (Fla. 3d DCA 2018).

Pursuant to Title VII, an aggrieved party must first seek a right to sue letter from the EEOC and then file the claim within 90 days of the time the EEOC issues the letter. *See* 29 CFR § 1601.28(e)(1); *Williams v. Southeast Florida Cable, Inc.*, 782 So. 2d 988, 991 (Fla. 4th DCA 2001). A Title VII claim is time barred and subject to dismissal with prejudice if the aggrieved party fails to timely file the claim within 90 days of the time the EEOC issues the right to sue letter. *Williams*, 782 So. 2d at 991 (citing *In re Estate of Smith*, 685 So. 2d 1206, 1210 (Fla.), *cert. denied*, 520 U.S. 1265, 117 S. Ct. 2434, 138 L.Ed.2d 195 (1997); *Wiley v. Roof*, 641 So.2d 66, 68-69 (Fla. 1994); *Wood v. Eli Lilly & Co.*, 701 So. 2d 344, 346 (Fla. 1997); *Gusow v. A.B.C. Elec. Contractors, Inc.*, 524 So. 2d 1109 (Fla. 4th DCA 1998)).

Here, there is no allegation that Plaintiff complied with the administrative requirements prior to bringing this action. There is no allegation that Plaintiff timely complied with the statutory requirements or that Plaintiff generally performed all conditions precedent. Nor is there any allegation that Plaintiff received a right to sue letter from the EEOC allowing Plaintiff to file a

lawsuit against the City or CRA and that Plaintiff timely filed said lawsuit within 90 days of receipt of the right to sue letter. Plaintiff also fails to attach as an exhibit to the amended complaint a copy of the right to sue letter. If Plaintiff failed to secure her right to sue letter and failed to timely file this lawsuit under Title VII, then her claim is time-barred and dismissal with prejudice of her Title VII claims is warranted. The complete absence of these allegations in the Amended Complaint renders it deficient as to the claims asserted under Title VII and FCRA. Accordingly, as Plaintiff has failed to allege compliance with administrative remedies prior to bringing suit, Counts I, II, III, IV, VII, VIII, IX and X should be dismissed.

> **D.**     ***Plaintiff fails to allege the elements necessary to establish the City and the CRA are "employers" under Title VII, FCRA and FMLA [ALL COUNTS]***

In the Amended Complaint, Plaintiff alleges that the City and the CRA "jointly" employed Plaintiff, and exercised the same control over the Plaintiff's former position; claiming both Defendants had the ability to give Plaintiff assignments, supervise Plaintiff, determine pay rates or methods of payment and shared ownership of the facilities where Plaintiff worked. *See Ex. A*, ¶18.

Plaintiff does not allege that the City controls the CRA and Plaintiff does not allege that the City and the CRA are a singular entity. Instead, to establish that the City and the CRA are both liable, Plaintiff declares that both the City and the CRA are managed by the same individuals— the Mayor and members of the City Commission. *See Ex. A*, ¶16. However, Plaintiff ignores the undisputed fact that the CRA is a separate legal entity. *See Ex. B,* ¶¶ 3-7. Also, none of the allegations added to the Amended Complaint reference the number of employees employed by the City or the CRA. Therefore, Plaintiff has failed to establish that the City or the CRA is an "employer" as defined by Title VII, FCRA or FMLA.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. In other words, an entity can be held liable for discrimination if it is an "employer" of the plaintiff. An "employer" under Title VII is defined as one "engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The FCRA makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status. *See* § 760.10, Fla. Stat. An "employer" is defined as one that employs fifteen or more employees. *See* § 760.02(7), Fla. Stat.  The Family Medical Leave Act (the "FMLA") defines "employer" as "any person engaged in commerce or any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(a).

In *Arbaugh v. Y & H Corp.*, the Supreme Court was asked to determine whether the 15-employee threshold to be an "employer" under Title VII was an element of the plaintiff's claim for relief or if the threshold was a jurisdictional issue. 546 U.S. at 504. The Supreme Court held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief…" *Id.* at 516. FCRA claims are analyzed under the same burden-shifting framework for Title VII claims. *See Gamboa v. American Airlines*, 170 Fed. Appx. 610, 612 (11th Cir. 2006); *see also Barr v. Kelsey/95 Corp.*, 2021 WL 2531065, *1 (S.D. Fla. 2021) ("Similarly, the FCRA's numerosity requirement here is an element of Plaintiff's claim, not a jurisdictional element"). Last, the logic provided in *Arbaugh* also applies to claims brought under the FMLA's

fifty-employee threshold. *See Lowmack v. American Air Conditioning & Heating Solutions, LLC*, 2022 WL 1321385, at *3 (M.D. Fla. May 3, 2022) (citing *Arbaugh*, 546 U.S. at 516).

As far as describing named Defendants, Plaintiff makes the conclusory, unsupported allegation that the City and the CRA "jointly" employed Plaintiff and had control over the Plaintiff's then-position; however, there is no allegation that the City or the CRA employed fifteen or more employees within the meaning of Title VII or FCRA. *See Ex. A*, ¶¶4, 16-18, 19-38, 53-72. Nor does she allege the City or CRA employed fifty employees or more within the meaning of the FMLA. Accordingly, Plaintiff has failed to establish the necessary elements to bring claims against the City and the CRA under Title VII, FCRA, or FMLA and, thus, these claims should be dismissed with prejudice.

### E.      *Plaintiff fails to state a claim for pregnancy discrimination under PDA/Title VII [COUNTS I and VII] and the Florida Civil Rights Act [COUNTS IV and X].*

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). The Pregnancy Discrimination Act ("PDA") specifically amended Title VII in 1978 to include reference to pregnancy as a prohibited discrimination based on sex. In 2013, the Florida Supreme Court held that the Florida Civil Rights Act ("FCRA") implicitly protected against pregnancy discrimination within the prohibition of discrimination based on sex. Thereafter, in 2015, the Florida Legislature specifically added pregnancy as a prohibited basis of discrimination.

Still, based on decades of precedent, "[t]he analysis for a pregnancy discrimination claim is the same as for a Title VII sex discrimination claim." *Penaloza v. Target Corp.*, 549 F. App'x 844, 846 (11th Cir. 2013) (citing *Armstrong v. Flowers Hosp.., Inc.*, 33 F.3d 1308, 1312-13 (11th

Cir. 1994). "The Title VII analysis also applies to FCRA claims." *Penaloza*, 549 F. App'x at 846

(citing *Harper v. Blockbuster*, 139 F.3d 1385, 1389 (11th Cir. 1998)).

To state a claim for pregnancy discrimination to be proven by circumstantial evidence

under Title VII and within the *McDonnell Douglas*[2] framework, Plaintiff must allege:

> (1) That she is a member of the protected class;
> (2) That she was qualified for the position;
> (3) That she suffered an adverse employment action; and
> (4) That employment or disciplinary policies were differently applied to her.

*Stephens v. Adler Soc., LLC*, No. 20-62242-CIV, 2021 WL 5084236, at *3 (S.D. Fla. Mar. 12,

2021) (quoting *Hite v. Hill Demarceuticals, Inc.*, 619 Fed. App'x 908 (11th Cir. 2015)).

"Generally, when the plaintiff alleges discriminatory discipline, the plaintiff must show that the

employer treated similarly situated employees not of the protected class more favorably. *See*

*Hubbard v. Meritage Homes of Fla., Inc.*, 520 F. App'x 859, 863 (11th Cir. 2013).

A plaintiff must show she is "similarly situated in all material respects" to comparators. *Lewis v.*

*City of Union City, Ga.*, 918 F.3d 1213, 1229 (11th Cir. 2019) (en banc).

Determining whether comparators meet that standard is inherently context-specific to each

case. *Id.* at 1227. Yet an "employer is well within its rights to accord different treatment to

employees who are differently situated in 'material respects'—e.g., who engaged in different

conduct, who were subject to different policies, or who have different work histories." *Id.* at 1228.

At bottom, the analysis turns on the "substantive likenesses" between the plaintiff and the

comparators. *Id.* This requires a plaintiff to show that the comparator "is similarly situated in terms

of conduct, performance, and qualifications, and that no differentiating or mitigating

circumstances distinguish their situations." *Dawson v. Miami-Dade County*, No. 07-20126, 2008

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973).

WL 1924266 at *9 (S.D. Fla. March 11, 2008) (citation omitted); *See also Flemings v. U.S. Sec. Assocs., Inc.*, No. 18-24861-CIV, 2020 WL 1503638, at *7 (S.D. Fla. Mar. 4, 2020), *report and recommendation adopted*, No. 18-24861-CIV, 2020 WL 1493468 (S.D. Fla. Mar. 27, 2020) (plaintiff failed to state claim for disparate treatment where she alleged only that a Hispanic male replaced her and that her employer treated Hispanic males more favorably).

In employment discrimination cases, the question of whether the plaintiffs are similarly situated with non-minority members is crucial. *Marshall v. W. Grain Co.*, 838 F. 2d 1165, 1168 (11th Cir. 1988) (citing *Johnson v. Artim Transportation System, Inc.,* 826 F.2d 538 (7th Cir.1987) (upholding district court finding that five white employees with different disciplinary records were not similarly situated with plaintiff); *Kendall v. Block*, 821 F. 2d 1142 (5th Cir. 1987) (upholding district court finding that white employees with different grade levels and performance ratings were not similarly situated with plaintiff)).

Here, Plaintiff alleges two separate counts for pregnancy discrimination under Title VII as amended by the PDA (Counts I and VII) and two counts for pregnancy discrimination under the FCRA (Counts IV and X). *See Ex. A*, ¶¶19-23, 34-38, 53-57, 68-72.

Plaintiff generally alleges she was terminated from her position, informed that her position had been eliminated and later observed two separate openings listing the same job duties as Plaintiff's eliminated position, which are still being performed under almost identical new positions. *See Ex. A*, ¶¶9-10, 14-15. Plaintiff, however, fails to allege that she, specifically, was qualified for her position that was subsequently eliminated or the two openings she observed. Plaintiff's reference to the request for funds for Plaintiff to attend a conference prior to her pregnancy announcement and a press release about Plaintiff do not serve as a factual basis to demonstrate Plaintiff was capable of performing her job, which was eliminated, or the two

openings she observed. *See Ex. A*, ¶¶11-13. Accordingly, as Plaintiff does not allege that she was specifically qualified to perform the duties of her eliminated position or the two openings observed, Plaintiff has failed to allege second *prima facie* element to state a claim for Pregnancy Discrimination under Title VII and the FCRA, specifically in Counts I and IV against the City and in Counts VII and X against the CRA.

Plaintiff also fails to establish the fourth element of a claim for pregnancy discrimination, which requires specific allegations that Plaintiff was treated differently from employees not within the protected class. In fact, Plaintiff fails to allege that any comparable employees not within the protected class were treated more favorably than she was. *See Ex. A*. Moreover, Plaintiff fails to identify any policies that were applied to her differently than they were applied to other employees not within the protected class. *Id.* As Plaintiff does not allege that the City or the CRA treated other employees not with the protected class more favorably, Plaintiff has failed to allege the fourth *prima facie* element to state a claim for pregnancy discrimination under Title VII and the FCRA.

Given the analysis of a claim for pregnancy discrimination under the Title VII and the FCRA are analyzed under the same framework and Plaintiff's general, boilerplate allegations against the City contained in Counts I and IV, and those against the CRA in Counts IV and X, are virtually identical, the above analysis demonstrates Plaintiff has failed to allege the second and fourth *prima facie* elements of a claim for pregnancy discrimination under both Title VII and the FCRA. The same analysis applies to the allegations in Counts I and IV against the City and in Counts VII and X against the CRA. Accordingly, Counts I, IV, VII and X of Plaintiff's Amended Complaint should be dismissed with prejudice.

 **F.**   ***No cause of action for disability discrimination under Title VII of the Civil Rights Act of 1964 [COUNTS II and VIII].***

Title VII prohibits discrimination practices based on an individual's "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a). "Absent discrimination based on one of these enumerated characteristics, unfair treatment cannot be an unlawful employment practice under Title VII." *Branscomb v. Secretary of Navy*, 461 F.. App'x. 901, 906 (11th Cir. 2012); *See also Crisman v. Fla. Atl. Univ. Bd. of Trustees*, 659 F. App'x 572, 578 (11th Cir. 2016). In other words, there is no cause of action for *disability* discrimination under Title VII, and accordingly, Plaintiff cannot state a claim for disability discrimination under Title VII upon which relief may be granted. *See Henneghan v. District of Columbia Public Schools*, 597 F.Supp.2d 34 (D.D.C. 2009) (clarifying Title VII does not address disability discrimination).

Here, Plaintiff's Title VII claims against the City in Count II and against the CRA in Count VIII of the Amended Complaint are based solely on Plaintiff's alleged "disability." *See Ex. A*, ¶¶24-28, 58-62.  Because disability is not a characteristic protected under Title VII, Counts II and VIII should be dismissed with prejudice as a matter of law. Moreover, given this is the second time the same arguments have been aimed at the deficient allegations provided in the initial complaint (which were merely copied and pasted), Defendants ask this Court to dismiss Counts II and VIII with prejudice.

### G.    *Plaintiff fails to state a claim for disability discrimination under the Florida Civil Rights Act [COUNTS III and IX].*

The Florida Civil Rights Act ("FCRA") provides: "All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, **handicap**, familial status, or religion." § 760.08, Fla. Stat. (2021) (emphasis added). Notably, the FCRA is construed in conformity with the Americans with

Disabilities Act ("ADA"). *See Abadi v. Walt Disney World Parks & Resorts*, 338 So. 3d 1101, 1104 (Fla. 1st DCA May 25, 2022).

> To state a prima facie case of disability discrimination under either the ADA or the FCRA, a petitioner must establish that (1) he or she has a statutorily covered disability; (2) he or she is a qualified individual; and (3) he or she was discriminated against because of his or her disability.

*Lenard v. A.L.P.H.A. "A Beginning" Inc.*, 945 So. 2d 618, 621 (Fla. 2d DCA 2006). "To constitute a 'disability' under the ADA, the impairment must 'substantially limit' a major life activity of the petitioner." *Lenard*, 945 So. 2d at 621. "The ADA provides that a 'qualified individual' is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job." *Smith v. Avatar Properties, Inc.*, 714 So. 2d 1103, 1106 (Fla. 5th DCA 1998) (citing 42 U.S.C. § 12111(8)).

First, in Counts III and IX, Plaintiff does not allege claims of disability discrimination against the City or the CRA pursuant to the ADA. *See Ex. A*, ¶¶24-28, 63-67. Plaintiff fails to allege that she suffered from any statutorily covered disability or that she was qualified to perform the tasks and duties of her former position. Nor does Plaintiff allege that her pregnancy itself was a disability. Plaintiff does not identify any major life activity that was substantially impaired or impaired at all due to her pregnancy status. Absent any allegation of an identifiable disability or serious health condition related to Plaintiff's pregnancy so as to substantially impair a specific major life activity, Plaintiff has failed to allege the first *prima facie* element of a claim for disability discrimination under the FCRA.

Second, Plaintiff also fails to allege that she was qualified for her position, independent of her alleged disability. *See Smith*, 714 So. 2d at 1106. Instead, Plaintiff alleges she was terminated from her position, but later observed two separate position openings at the City, identifying the duties listed therein as the duties of her eliminated position. *See Ex. A*, ¶¶9-10, 14-15. These

allegations do not establish that Plaintiff was qualified for the former position or the two openings. Plaintiff's allegation that both the City and the CRA had authority to assign tasks to the Plaintiff, change her salary, hire and fire her, among other claims, also fail to provide a factual basis establishing Plaintiff was qualified for the position from which she was terminated, or the two openings identified. Thus, Plaintiff has also failed to allege the second *prima facie* element of a claim for disability discrimination under the FCRA.

Accordingly, as Plaintiff has failed to allege any disability or pregnancy-related serious health condition amounting to a disability; as well as failing to allege Plaintiff was qualified for the terminated position and/or the two openings—which Plaintiff does not allege she applied to— Plaintiff has failed to state a claim for disability discrimination pursuant to the Florida Civil Rights Act. Plaintiff's claims for disability discrimination under the Florida Civil Rights Act, as alleged in Counts III and IX, should be dismissed as there is no factual basis alleged in Plaintiff's Charge of Discrimination, the initial complaint or the Amended Complaint, that Plaintiff suffered from *any* disability or was unlawfully terminated for the same. Defendants further ask this Court to dismiss Counts III and IX with prejudice, as this is the second time the same arguments have been aimed at the deficient allegations provided in the initial complaint.

**H.    Plaintiff fails to state a claim for interference with a substantive right under the Family Medical Leave Act [COUNTS V and XI].**

The Family Medical Leave Act ("FMLA") provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter…(D) Because of a **serious health condition that makes the employee unable to perform the functions of such employee**…" 29 U.S.C.A. § 2612 (emphasis added).

"There are two types of FMLA claims: (1) interference claims, where an employer denies or otherwise interferes with substantive rights under the FMLA; and (2) retaliation claims, where an employer retaliates against an employee for engaging in activity protected by the FMLA." *Penaloza v. Target Corp.*, 549 F. App'x 844, 847 (11th Cir. 2013) (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir.2000)). An employee claiming interference must show she was entitled to a benefit that she was denied. *Penaloza*, 549 F. App'x at 847 (citing *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206–07 (11th Cir. 2001)).

"An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir.2010)).

To be eligible for FMLA benefits, an employee must have worked for the employer for 12 consecutive months and at least 1,250 hours. 29 U.S.C. § 2611(2)(A). Plaintiff's Amended Complaint is devoid of any allegations that she satisfied these requirements to be eligible for FMLA benefits. *See Ex. A.* Also, Plaintiff vaguely alleges that she suffered from a "serious health condition" within the meaning of the FMLA; however, she fails to cite the particular statute at issue. *See Ex. A*, ¶¶42, 76. Assuming Plaintiff is seeking relief pursuant to alleged violations of 29 U.S.C. § 2612(a)(1)(D), Plaintiff's Amended Complaint falls short of stating *prima facie* claims for FMLA interference.

Here, Plaintiff does not allege that she had started any FMLA paperwork related to a "serious health condition," only that she began FMLA paperwork after purportedly informing Human Resources that she was pregnant. *See Ex. A*, ¶6. In Counts V and XI, Plaintiff generally alleges that she suffered from a "serious health condition;" thus, it appears that Plaintiff is seeking

relief for an alleged violation of § 2612(a)(1)(D). This is the second time Plaintiff does not clarify which subsection applies, thus, based on Plaintiff's vague allegations and assertions, Defendants presume Plaintiff is seeking relief pursuant to § 2612(a)(1)(D).

As to the first element, that Plaintiff was entitled to a benefit under the FMLA, Plaintiff does not allege what serious health condition she suffered from or that her pregnancy itself was as serious health condition. *See Ex. A*, ¶¶1-18. Plaintiff makes a general reference to the FMLA after she notified Human Resources of her pregnancy and "began her FMLA paperwork." *See Ex. A*, ¶6.[3] Plaintiff, however, fails to allege she engaged in any conduct related to FMLA leave due to her "serious health condition." The only reference to a "serious health condition" appears in paragraphs 42 and 76 of the Amended Complaint, specifically under Counts V and XI.

As to the second element, Plaintiff does not allege that she was ever denied the benefit of FMLA Leave. Plaintiff relies solely on the boilerplate allegation that the City and the CRA "interfered with Plaintiff's lawful exercise of her FMLA rights" and such unidentified actions "constitute violations of the FMLA." *See Ex. A*, ¶¶43-44, 77-78. Plaintiff also fails to allege how the City or the CRA interfered with Plaintiff's rights as related to her "serious health condition." Accordingly, Counts V and XI of the Amended Complaint should be dismissed with prejudice, as the Plaintiff has failed to state a claim yet again.

I.   ***Plaintiff fails to state a claim for retaliation in violation of the Family Medical Leave Act [COUNTS VI and XII].***

Under the FMLA, "[a]n employee claiming retaliation must show that the employer's actions 'were motivated by an impermissible discriminatory or retaliatory animus.'" *Penaloza v.*

---

[3] The only other reference to the FMLA is Plaintiff's conclusion alleging the only logical reason she was terminated by the City was because the City did not want to have a pregnant person working in that position who would soon be taking FMLA. *See* Amended Complaint, ¶13.

*Target Corp.*, 549 F. App'x 844, 847 (11th Cir. 2013) (quoting *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1207 (11th Cir. 2001)). The prima facie case of retaliation under the FMLA is the same as under Title VII and requires a showing of (1) statutorily protected conduct, (2) adverse employment action, and (3) causation. *See Penaloza*, 549 F. App'x at 847–48 (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir.2010)).

The Eleventh Circuit has analyzed FMLA retaliation borrowing from Title VII retaliation case law. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir 2000) ("When evaluating a claim of retaliation under the FMLA…we apply the burden-shifting framework…for evaluating Title VII retaliatory discharge claims"). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

After the *Nassar* decision from the Supreme Court, Florida's Fourth District was asked to opine whether the "but-for" causation standard adopted in *Nassar* applied to retaliation claims advanced under the FCRA. *See Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (discussing *Nassar*, 570 U.S. at 350-351). In *Wright*, the Fourth District adopted the new standard applying "but-for causation" to retaliation claims under the same framework. *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017).

Here, as in Counts V and XI, Plaintiff vaguely alleges that she suffered from a "serious health condition" within the meaning of the FMLA but fails to cite the particular statute at issue. Even assuming Plaintiff is seeking relief for an alleged violation of 29 U.S.C. § 2612(a)(1)(D), she has failed to allege that her pregnancy was a serious health condition and, thus, Plaintiff has failed to provide the necessary factual basis to state a claim. In Counts VI and XII, Plaintiff re-adopts the general allegations contained within paragraph 1 through 11 only. *See Ex. A*, ¶¶46, 80. In the

general allegations, Plaintiff alleges she was pregnant and terminated due to her pregnancy; however, Plaintiff does not allege that her pregnancy was a serious health condition or that she suffered a serious pregnancy-related health condition. *See Ex. A*, ¶¶1-11.

Plaintiff also alleges that she notified Human Resources of her pregnancy and "began her FMLA paperwork." *See Ex. A*, ¶6. Plaintiff does not, however, allege that she notified Human Resources of any "serious health condition," that she began FMLA paperwork related to a serious health condition or that she was terminated due to her attempt to exercise her rights under the FMLA related to her serious health condition. Plaintiff also fails to allege that she was terminated in relation to exercising her rights related to her serious health condition. *See Ex. A*, ¶¶1-18.

Plaintiff has not alleged that she engaged in any statutorily protected conduct related to a "serious health condition." Plaintiff has similarly failed to allege a causal connection between any statutorily protected conduct related to her "serious health condition" and the alleged adverse employment action. Moreover, Plaintiff's Amended Complaint does not allege that "but for" her "serious health condition," she would not have suffered from the adverse employment action. *See Ex. A*, ¶¶46-52, 80-86. Specifically, Plaintiff's Amended Complaint is devoid of any allegation that the City's alleged desire to retaliate against her was the "but-for" cause of the elimination of Plaintiff's position. *See Wright*, 217 So. 3d at 165. Accordingly, as Plaintiff has failed to allege a *prima facie* claims of FMLA retaliation, Counts VI and XII should be dismissed.

WHEREFORE, Defendants, CITY OF DANIA BEACH and CITY OF DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY, respectfully request this Honorable Court enter an Order dismissing Plaintiff's First Amended Complaint with prejudice and awarding any further relief this Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by e-service

to all parties on the attached Counsel List this 16th day of December, 2022.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendants


*/s/ Lyman H. Reynolds, Jr.*
LYMAN H. REYNOLDS, JR.
Florida Bar No: 380687
ANDREA G. AMIGO
Florida Bar No.: 11026

STYLE:          MURIEL BRYAN v. CITY OF DANIA BEACH & CRA
CASE NO.:       22-CA-009793
OUR FILE NO.:   21-586

### COUNSEL LIST

RAINIER REGUEIRO, ESQ.
Abrams Law Firm, P.A.
888 SE 3rd Ave Suite 400,
Fort Lauderdale, FL 33316
Counsel for Plaintiff
PHONE: (954) 332-2358
E-SERVICE:
EMAIL: rregueiro@abrams-law.com; rabrams@abrams-law.com
FBN: 115578


LYMAN H. REYNOLDS, JR., ESQ.
ANDREA G. AMIGO, ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
Counsel for Defendants
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: aamigo@rrbpa.com
        ttravis@rrbpa.com
FBN: 380687/ 11026

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MURIEL BRYAN,

     Plaintiff,

vs.                                        Case No. CACE-22-009793

CITY OF DANIA BEACH and,
DANIA BEACH COMMUNITY
REDEVELOPMENT AGENCY

     Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, MURIEL BRYAN ("Plaintiff"), by and through the undersigned counsel, hereby

sues Defendant, CITY OF DANIA BEACH ("Defendant") and DANIA BEACH COMMUNITY

REDEVELOPMENT AGENCY and alleges as follows:

1. This is an action for discrimination based upon Plaintiff's disability and status as a pregnant

female pursuant to the Pregnancy Discrimination Act ("PDA"), as incorporated into Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) ("Title VII"), and the Florida Civil Rights Act

of 1992, Florida Statutes, Chapter 760 ("FCRA"), and the Family Medical Leave Act.

2. Plaintiff claims damages in excess of $30,000.

3. Plaintiff is a resident of Broward County, Florida, within the jurisdiction of this Honorable

Court.

4. Defendants are government entities authorized to conduct business in Broward County,

Florida, where Plaintiff worked for Defendants.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5.   On or about May 27, 2021, Plaintiff had a doctor's appointment where she was told she was pregnant.

6.   On or about May 28, 2021, Plaintiff, informed Human Resources for Defendants that she was pregnant and began her FMLA paperwork.

7.   On or about June 1, 2021 Plaintiff was on a conference call with her team and the Mayor of the City of Dania Beach in which she informed all on the call that she was pregnant.

8.   On or about June 11, 2021 she was terminated from her position with Defendants.

9.   At the time of her termination Plaintiff was told her position had been eliminated but that was a lie as when she looked online at job posting by the city they were looking for two people to fill the positions that had the same job duties as the position she had been terminated from.

10. This advertisement was done without following proper city procedures, this shows a hastiness to find someone else to perform the duties of her job as those duties were important to Defendant.

11. Also, her supervisor Michael Chen, before she announced her pregnancy, requested funds for her to attend a conference which was to occur in October of 2021, this further demonstrates that there was no rightful reason for termination as why would Defendant spend funds if it had already decided to eliminate her position.

12. Additionally, on their website the City of Dania Beach had done an article about her and her position and in the article it stated that her job as an Economic Development Manager "is especially important during these trying times where many of our local business and residents have drastically been affected by Covid-19"

13. When terminated she asked the city why she was being terminated and they stated to her that it had nothing to do with any discipline and that they were just eliminating the position, which did not make sense to her why they would eliminate a position which in their own words was "especially important during these trying times where many of our local business and residents have drastically been affected by Covid-19", the only logical reason for her termination was that they did not want to have a pregnant person working that position because I had expressed to my supervisor Michael Chen that I would soon be requesting FMLA leave.

14. On June 28, 2021 Plaintiff looked on Defendants website and saw they had posted a similar almost identical position to the Economic Development Manager position which she had been terminated from.

15. It is important to note that at present Plaintiff's former job duties are still being performed by employees of Defendants.

16. Both Defendants were joint employers of Plaintiff as they were both operated and managed by the same people, specifically the board members of DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY are solely comprised of the Mayor of THE CITY OF DANIA BEACH and all of the commissioners of THE CITY OF DANIA BEACH.

17. Additionally, Plaintiff was hired by THE CITY OF DANIA BEACH, as the memorandum congratulating her on receiving her position that she was ultimately fired from was done on THE CITY OF DANIA BEACH letterhead and her job summary and duties form was also made on THE CITY OF DANIA BEACH letter head and signed by an HR professional Shannel March who was an employee of THE CITY OF DANIA BEACH. (Exhibit A).

18. Lastly, both of the Defendants were joint employers of Plaintiff Muriel Bryan in that each entity had control over her job duties; in that either entity could give her job tasks to do; Muriel

Bryan was supervised by both entities directly and indirectly; Both Defendants had the power to determine the pay rates or the methods of payment of Muriel Bryan; Both Defendants had the right directly and indirectly, to hire, fire, or modify the employment conditions of Muriel Bryan; Both entities had a hand in the preparation of payroll and the payment of wages of Muriel Bryan; and Defendants shared ownership of the facilities where Muriel Bryan worked.

## COUNT I: PREGNANCY DISCRIMINATION UNDER THE PDA AND TITLE VII against CITY OF DANIA BEACH

19. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

20. Plaintiff is a member of a protected class under Title VII.

21. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her pregnancy in violation of the Pregnancy Discrimination Act and Title VII.

22. Defendant knew, or should have known, of the discrimination.

23. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

   a.  Adjudge and decree that Defendant has violated the PDA and Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

   b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

   c.  Enter an award against Defendant and award Plaintiff compensatory damages for

mental anguish, personal suffering, and loss of enjoyment of life;

d.   Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II: DISABILITY DISCRIMINATION UNDER TITLE VII against CITY OF DANIA BEACH

24. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

25. Plaintiff is a member of a protected class under Title VII.

26. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability and/or perceived disability in violation of Title VII.

27. Defendant knew, or should have known, of the discrimination.

28. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III: DISABILITY DISCRIMINATION UNDER THE FCRA against CITY OF DANIA BEACH

29. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

30. Plaintiff is a member of a protected class under the FCRA.

31. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability and/or perceived disability in violation of the FCRA.

32. Defendant knew, or should have known, of the discrimination.

33. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the FCRA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for

mental anguish, personal suffering, and loss of enjoyment of life;

    d.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

    e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV: PREGNANCY DISCRIMINATION UNDER THE FCRA against CITY OF DANIA BEACH

34. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

35. Plaintiff is a member of a protected class under the FCRA.

36. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her pregnancy in violation of the FCRA.

37. Defendant knew, or should have known, of the discrimination.

38. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

    a.  Adjudge and decree that Defendant has violated the FCRA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

    b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

    c.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.   Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT V: INTERFERENCE WITH RIGHTS UNDER THE FMLA against CITY OF DANIA BEACH

39. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

40. Plaintiff is an individual entitled to protection under the FMLA.

41. Plaintiff is an employee within the meaning of the FMLA.

42. Plaintiff suffered from a serious health conditions within the meaning of the FMLA.

43. Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights.

44. Defendant's actions constitute violations of the FMLA.

45. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated the FMLA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter an award against Defendant and award Plaintiff compensatory damages for

mental anguish, personal suffering, and loss of enjoyment of life;

d.  Require Defendant to reinstate Plaintiff to her position at the rate of pay and with the full benefits she would have, had she not been discriminated against by Defendant, or in lieu of reinstatement, award her front pay;

e.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

f.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VI: RETALIATION UNDER THE FMLA against CITY OF DANIA BEACH

46. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-11 above as if set out in full herein.

47. Plaintiff is an individual entitled to protection under the FMLA.

48. Plaintiff is an employee within the meaning of the FMLA.

49. Plaintiff suffered from a serious health conditions within the meaning of the FMLA.

50. Defendant discriminated against Plaintiff by retaliating against her for exercising rights protected under the FMLA.

51. Defendant's actions constitute a violation of the FMLA.

52. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated the FMLA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices

described herein;

c.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.  Require Defendant to reinstate Plaintiff to her position at the rate of pay and with the full benefits she would have, had she not been discriminated against by Defendant, or in lieu of reinstatement, award her front pay;

e.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VII: PREGNANCY DISCRIMINATION UNDER THE PDA AND TITLE VII against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

53. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

54. Plaintiff is a member of a protected class under Title VII.

55. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her pregnancy in violation of the Pregnancy Discrimination Act and Title VII.

56. Defendant knew, or should have known, of the discrimination.

57. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendant:

f.  Adjudge and decree that Defendant has violated the PDA and Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

g.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

h.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

i.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

j.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VIII: DISABILITY DISCRIMINATION UNDER TITLE VII against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

58. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

59. Plaintiff is a member of a protected class under Title VII.

60. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability and/or perceived disability in violation of Title VII.

61. Defendant knew, or should have known, of the discrimination.

62. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendant:

f.  Adjudge and decree that Defendant has violated Title VII, and has done so willfully,

intentionally and with reckless disregard for Plaintiff's rights;

g.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

h.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

i.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

j.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IX: DISABILITY DISCRIMINATION UNDER THE FCRA against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

63. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

64. Plaintiff is a member of a protected class under the FCRA.

65. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability and/or perceived disability in violation of the FCRA.

66. Defendant knew, or should have known, of the discrimination.

67. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

f.  Adjudge and decree that Defendant has violated the FCRA and has done so willfully,

intentionally and with reckless disregard for Plaintiff's rights;

g. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

h. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

i. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

j. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.


### COUNT X: PREGNANCY DISCRIMINATION UNDER THE FCRA against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

68. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

69. Plaintiff is a member of a protected class under the FCRA.

70. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her pregnancy in violation of the FCRA.

71. Defendant knew, or should have known, of the discrimination.

72. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

f. Adjudge and decree that Defendant has violated the FCRA and has done so willfully,

intentionally and with reckless disregard for Plaintiff's rights;

g.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment at amounts to be proved at trial for the unlawful employment practices described herein;

h.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

i.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

j.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT XI: INTERFERENCE WITH RIGHTS UNDER THE FMLA against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

73. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

74. Plaintiff is an individual entitled to protection under the FMLA.

75. Plaintiff is an employee within the meaning of the FMLA.

76. Plaintiff suffered from a serious health conditions within the meaning of the FMLA.

77. Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights.

78. Defendant's actions constitute violations of the FMLA.

79. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

g.  Adjudge and decree that Defendant has violated the FMLA and has done so willfully,

intentionally and with reckless disregard for Plaintiff's rights;

h.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

i.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

j.  Require Defendant to reinstate Plaintiff to her position at the rate of pay and with the full benefits she would have, had she not been discriminated against by Defendant, or in lieu of reinstatement, award her front pay;

k.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

l.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT XII: RETALIATION UNDER THE FMLA against DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

80. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-11 above as if set out in full herein.

81. Plaintiff is an individual entitled to protection under the FMLA.

82. Plaintiff is an employee within the meaning of the FMLA.

83. Plaintiff suffered from a serious health conditions within the meaning of the FMLA.

84. Defendant discriminated against Plaintiff by retaliating against her for exercising rights protected under the FMLA.

85. Defendant's actions constitute a violation of the FMLA.

86. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

f.   Adjudge and decree that Defendant has violated the FMLA and has done so willfully, intentionally and with reckless disregard for Plaintiff's rights;

g.   Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, at amounts to be proved at trial for the unlawful employment practices described herein;

h.   Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

i.   Require Defendant to reinstate Plaintiff to her position at the rate of pay and with the full benefits she would have, had she not been discriminated against by Defendant, or in lieu of reinstatement, award her front pay;

j.   Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Respectfully submitted.

11/22/22

GALLARDO LAW OFFICE, P.A.
8492 SW 8th Street
Miami, Florida 33144
Telephone: (305) 261-7000
Facsimile: (786) 527-3242

By: s/ Rainier Regueiro
Rainier Regueiro, Esq.
Fla. Bar No.: 115578

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 11/22/22, I electronically filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via electronic transmission of Notices generated by the Florida Courts E-Filing Portal or in some other authorized manner for those counsel or parties who are not authorized to receive such Notices.

LYMAN H. REYNOLDS, JR., ESQ.
ANDREA G. AMIGO, ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
Counsel for Defendant
PHONE: 561-688-6560
FAX: 561-688-2343

s/ Rainier Regueiro
Rainier Regueiro, Esq.
Fla. Bar No.: 115578
GALLARDO LAW OFFICE, P.A.
8492 SW 8th Street
Miami, Florida 33144
Telephone: (305) 261-7000

**EXHIBIT B**



**DANIA BEACH**
SEA IT. LIVE IT. LOVE IT.

**CITY OF DANIA BEACH**
**HUMAN RESOURCES DEPARTMENT**

**MEMORANDUM**

| | |
|---|---|
| **DATE:** | September 15, 2020 |
| **TO:** | Muriel Bryan |
| **FROM:** | Linda Gonzalez, HR/Risk Management Director *LG* |
| **CC:** | Rickelle Williams, Executive Director, CRA |
| **CC:** | Shannel March, HR Generalist |
| **SUBJECT:** | Promotion to Manager II, Economic Development |

Congratulations on your promotion to *Manager II, Economic Development*! Your hard work and dedication to the City of Dania Beach are greatly appreciated. As of September 30, 2020, your salary will be $70,000.00.

Please sign below indicating your acceptance of the position, as well as the attached job description, and return to Human Resources.

Congratulations and the best of luck in your new role!

_____          9.16.2020
Muriel Bryan                                                        Date

NOT AN OFFICIAL COPY - CCO - ATTORNEY OF RECORD



**DANIA BEACH**
SEA IT. LIVE IT. LOVE IT.

| | |
|---|---|
| **Job Title:** | Manager II, Economic Development |
| **Department:** | CRA |
| **Union Eligible:** | Eligible |
| **Pay Grade:** | 116 |
| **FLSA Status:** | Non-Exempt |

**JOB DESCRIPTION**

*To perform this job successfully, an individual must be able to perform the essential job functions satisfactorily. Reasonable accommodations may be made to enable individuals with disabilities to perform the primary job functions described herein. Since every duty associated with this position may not be described herein, employees may be required to perform duties not specifically spelled out in the job description, but which may be reasonably considered to be incidental in the performing of their duties just as though they were actually written out in this job description.*

**JOB SUMMARY**

Assists in supporting the CRA's economic development program and redevelopment activities, including efforts focused on the retention and expansion of existing businesses and efforts to bring in specific targeted businesses to the CRA; coordinates with City staff and developers to include the preparation of development agreements, develops and executes marketing and business development efforts, coordinates with other County and City agencies, and follows-up on business lead/interested parties.

**ESSENTIAL JOB FUNCTIONS**

- Plans strategies to attract new businesses and encourage expansion and retention of existing businesses to promote a stronger economic base. Identifies and targets businesses and industries to the CRA.
- Promotes City of Dania Beach CRA as a viable option for location of business/industry by contacting national and international businesses.
- Represents regional area at meetings, presentations, trade shows and through development of proposals and promotional materials.
- Works with City officials and management to ensure support and coordinate economic development activities.
- Coordinates CRA economic development activities with the Chamber of Commerce, Convention and Visitors Bureau, other city departments, other governmental agencies, private enterprise, civic groups and the public.
- Coordinates activities with other local agencies addressing workforce and training issues.
- Supervises, directs, and evaluates department staff; develops policies and procedures; and evaluates program effectiveness.
- Ensures and encourages compliance with CRA adopted safety policies and procedures.
- Prepares and administers agency's budget.
- Assists in facilitating the economic development planning process.
- Supports economic development initiatives and committees.
- Develops economic profiles of the region and community.
- Assists in facilitating the development of a CRA economic development plan including, vision, goals and objectives.
- Researches and provides recommendation on economic development opportunities.

NOT AN OFFICIAL COPY - CCO ATTORNEY'S RECORD

- Evaluates results of economic development studies and agreements and makes recommendations.
- Identifies sectoral opportunities for economic development (i.e. digital media, arts).
- Helps develop partnerships.
- Assists local organizations, businesses and individuals to take advantage of economic development opportunities and major projects.
- Assists with the development of job creation projects.
- Conducts surveys and research on market opportunities.
- Identifies capital development program opportunities.
- Identifies community training and development requirements to take advantage of economic development opportunities.
- Researches private and public sector economic development funding opportunities.
- Consults with industry and government representatives concerning eligibility requirements for funding.
- Prepares proposals for funding to support CRA economic development.
- Identifies opportunities for joint ventures.
- Assists with negotiations concerning joint ventures.
- Provides assistance on preparing a business plan.
- Provides advice on market analysis and economic opportunities.
- Provides advice on product development and identification of target markets
- Identify management capabilities and recommend training requirements.
- Determines startup costs, forecast sales and conduct a break even analysis.
- Assists with financing.
- Assists with marketing planning.
- Conducts financial analysis on proposed business plans and opportunities.
- Provides advice on licensing, taxation and business related requirements.
- Conducts site visits and monitor business results.
- Provides after care services such as assisting with bookkeeping, establishing cash controls and providing training.
- Maintains files and records on local businesses and economic development opportunities
- Develops community and regional networks.
- Develops a business registry.
- Develops the Community Economic Development Web site.
- Assist local governments in their planning and development efforts, including development of projects, identification of funding sources, assistance in preparing applications for said funding sources, and tracking projects to completion.
- Performs detailed research and analytical studies of key issues related to local project funding needs and application preparation.
- Performs complex consultative and technical work in the planning, development and implementation of the agency's community development and economic development programs.
- Manages development and implementation of a regional economic development plan.
- Performs complex analysis of data to guide planning efforts for jurisdiction in the region and the region collectively and provides support to the Regional Information Clearinghouse.
- Works with considerable latitude for the use of initiative and independent judgment.
- Perform tasks such as meetings with loan applicants, preparing for financial reports to localities and EDA concerning loan administration, monitor loans by making visits to business, and prepare information for economic development planning efforts and other duties as assigned.

- Maintains database of public and privately-owned sites and buildings available for development.
- Attends statewide economic development meetings and seminars.
- Serves as special project manager for special projects as assigned.
- Communicates with the Board of County Commissioners (Board), municipalities, townships, citizen advisory groups, other County department heads and Elected Officials and their employees, business owners, developers, and citizens in order to negotiate agreements, communicate needs of multiple parties, develop programmatic activities, explain projects, and present reports and recommendations.
- Prepares correspondence, detailed analytical documents, prepares and conducts presentations for the Board and provides project status reports in order to communicate program activities; explains complicate ideas and recommends alternatives.
- Form partnerships.
- Develops the necessary contact and networks dependent on the economic opportunities; and facilitates partnerships between businesses, government, educational and financial institutions.
- Performs related duties as directed when such duties are a logical and appropriate assignment to the position.

## KNOWLEDGE, SKILLS AND ABILITIES

- Knowledge of research and analytic techniques and principles and practices of economic development planning.
- Knowledge of diplomacy and public relations.
- Skill in the use small office equipment, including copy machines or multi-line telephone systems.
- Skill in performance of both general and complex economic studies.
- Skill in research and manipulation of data.
- Skill in using computers for word processing and accounting purposes.
- Ability to perform basic research and analyze data using acceptable research practices, and to formulate alternatives and recommendations.
- Ability to prepare written and graphic materials; to compose clear and concise reports; to prepare and make presentations; and to communicate effectively, orally and in writing, with citizens, professional peers and elected officials.
- Ability to operate a motor vehicle.
- Ability to organize and communicate effectively.

## MINIMUM EDUCATION AND EXPERIENCE REQUIREMENTS

Bachelor's degree in business, public administration, urban planning or a directly related field; five (5) years of work experience in economic or urban development, business, or marketing including project management experience in one or more areas such as commercial, manufacturing and industrial development, and experience in community planning and development in a municipal environment; or an equivalent combination of training, education, and experience.

## CERTIFICATION, LICENSE AND SPECIAL REQUIREMENTS

Possession of a valid driver's license with overall good driving record required. If driver's license is out of state, must be able to obtain a Florida driver's license within six (6) months of hire date.

Manager II, Economic Development                                    Page 4 of 4

A Motor Vehicle Record (MVR) check will be made to determine acceptance of past driving record. Membership in a related professional organization and designation as a Certified Economic Developer is highly desired.

## PHYSICAL DEMANDS

This work is sedentary work and requires exerting up to 10 pounds of force occasionally and negligible amount of force constantly to move objects; work may also require fingering, hearing, mental acuity, speaking, standing, talking, and walking.

## WORK ENVIRONMENT

Work is in a dynamic environment that requires sensitivity to changing goals, priorities, and needs.

*The City of Dania Beach has the right to revise this position description at any time, and does not represent in any way a contract of employment.*

I have read and understand this classification description and hereby certify that I am qualified to perform this job, with or without reasonable accommodation.

Employee Signature                                                 Date        9.16.2020

Shannel March
Digitally signed by Shannel March
DN: cn=Shannel March, o=City of Dania
Beach, ou,
email=smarch@daniabeachfl.gov, c=US
Date: 2021.03.04 15:50:19 -05'00'

Supervisor (or HR) Signature                                       Date

# EXHIBIT B

21-586

**IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: 22-CA-009793**

MURIEL BRYAN,

       Plaintiff,

vs.

CITY OF DANIA BEACH,

       Defendant.

_____/

## AFFIDAVIT OF K. MICHAEL CHEN

**STATE OF FLORIDA**

**COUNTY OF BROWARD**

    BEFORE ME, the undersigned authority, personally appeared K. Michael Chen, who after first being duly sworn, under oath, deposes and says:

    1.    I am over eighteen years of age. I have personal knowledge of the matters set forth herein.

    2.    I am the Executive Director of the Dania Beach Community Redevelopment Agency ("CRA") and have been employed in that capacity since November 2020.

    3.    The CRA is a separate entity from the City of Dania Beach.

    4.    The CRA was established in 2002 by the City of Dania Beach and Broward County for the development of specific areas within the City of Dania Beach. *See Composite Exhibit 1.*

    5.    Pursuant to Chapter 163, Part III, Florida Statutes, the CRA is responsible for the elimination of slum and blight within the community redevelopment area.

6.      The CRA has its own Taxpayer Identification Number. *Exhibit 2, CRA's W-9 Form.*

7.      The CRA entered into an Interlocal Cooperation Agreement with the City of Dania Beach and Broward County wherein the CRA and the City of Dania Beach agreed that "[t]he CRA and the City shall be responsible solely for the negligence, **respectively**, of the CRA and the City's agents, servants and employees." *See Comp. Ex. 1,* at p. 11.

8.      As of September 23, 2020, Plaintiff, Muriel Bryan, was a probationary employee of the CRA as the CRA's Economic Development Manager II. Plaintiff was not an employee of the City of Dania Beach.

9.      After I became the CRA's Executive Director in November 2020, Plaintiff worked under my supervision as a probationary employee of the CRA.

10.     Shortly after starting my new position as CRA Executive Director, I reviewed the CRA plan to analyze whether the goals and objectives of the CRA plan were being met and, as part of this analysis, on February 8, 2021, I proposed (1) eliminating the Economic Development Manager II position (Plaintiff's position) and a part-time Coordinator II position, and (2) creating two new positions, Economic Development Representative Strategic Communications and Economic Development Representative Business Development.

11.     On June 11, 2021, I, as the Executive Director of the CRA, notified Plaintiff of my decision to eliminate her probationary position with the CRA effective as of June 11, 2021. *Exhibit 3, 6/11/21 letter.*

12.     During Plaintiff's employment with the CRA, the CRA employed a total of nine (9) employees.

*FURTHER AFFIANT SAYETH NAUGHT.*

K. MICHAEL CHEN

**STATE OF FLORIDA)**
**COUNTY OF BROWARD)**

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, on _Sept 2_ ,2022, by K. Michael Chen, who is personally known to me or has produced _LICENCE_ as identification.

Notary Public, State of Florida

_PATRICIA Ann Flotz_
Print Name

My Commission Expires:

PATRICIA ANN FLOTZ
Notary Public · State of Florida
Commission # GG 365872
My Comm. Expires Aug 14, 2023
Bonded through National Notary Assn.

Page **3** of **3**

RESOLUTION NO. 2002-201

A RESOLUTION OF THE CITY OF DANIA BEACH ADOPTING RECITALS; APPROVING THE INTERLOCAL AGREEMENT BETWEEN BROWARD COUNTY, THE COMMUNITY REDEVELOPMENT AGENCY AND THE CITY TO ESTABLISH COUNTY, COMMUNITY REDEVELOPMENT AGENCY, AND CITY RESPONSIBILITIES FOR THE IMPLEMENTATION OF THE COMMUNITY REDEVELOPMENT PLAN; AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, on June 25, 2002, the City of Dania Beach Commission (the "City Commission") accepted a delegation of powers from the Broward County Board of County Commissioners (the "County") regarding the establishment and implementation of a Community Redevelopment Plan; and

WHEREAS, the City Commission pursuant to the County's delegation and Section 163.357, Florida Statutes, has established itself to be the Community Redevelopment Agency ("CRA") for the City of Dania Beach by City Ordinance No. 2002-032 (a copy is attached hereto as Exhibit A and incorporated by reference); and

WHEREAS, the City Commission pursuant to the County delegation and Section 163.360, Florida Statutes, has approved a Community Redevelopment Plan to enable the City to undertake redevelopment in the Downtown Dania Beach District Area (City Resolution No. 2002-163, attached as Exhibit B hereto and incorporated by reference); and

WHEREAS, the City Commission, the CRA and the County together desire to enter into an agreement of understanding to delineate areas of responsibility with respect to redevelopment of the Downtown Dania Beach District Area taken pursuant to the Community Redevelopment Plan; and

WHEREAS, the City Manager has negotiated with the County for consideration and ultimate approval by the City Commission.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF DANIA BEACH, FLORIDA:**

Section 1.    Recitals.    That the recitals contained in the preamble to this Resolution are incorporated by reference into it.

1                     RESOLUTION NO. 2002-201

**COMPOSITE
EXHIBIT 1**

Section 2.     Approval.     That the City Commission hereby approves the Interlocal Cooperation Agreement attached hereto as Exhibit C.

Section 3.     Effective Date.     That this Resolution shall become effective immediately upon its passage and adoption.

PASSED AND ADOPTED ON THIS 26TH DAY OF NOVEMBER, 2002.

ROBERT H. CHUNN, JR.
MAYOR-COMMISSIONER

ATTEST:

CHARLENE JOHNSON
CITY CLERK

ROLL CALL:
COMMISSIONER BERTINO-  YES
COMMISSIONER MCELYEA-  YES
COMMISSIONER MIKES-  YES
VICE-MAYOR FLURY-  YES
MAYOR CHUNN-  YES

APPROVED AS TO FORM AND CORRECTNESS:

THOMAS J. ANSBRO
CITY ATTORNEY

2                    RESOLUTION NO. 2002-201



# AGENDA REQUEST FORM
## CITY OF DANIA BEACH



## AGENDA ITEM NO._____

1.  **DATE OF COMMISSION MEETING: NOVEMBER 26, 2002**

2.  **DESCRIPTION OF AGENDA ITEM:    PUBLIC HEARING – CRA INTERLOCAL AGREEMENT**

3.  **COMMISSION ACTION BEING REQUESTED: ADOPT RESOLUTION** ☒

4.  **SUMMARY EXPLANATION & BACKGROUND:**

    A RESOLUTION OF THE CITY OF DANIA BEACH ADOPTING RECITALS; APPROVING
    THE INTERLOCAL AGREEMENT BETWEEN BROWARD COUNTY, THE COMMUNITY
    REDEVELOPMENT AGENCY AND THE CITY TO ESTABLISH COUNTY, COMMUNITY
    REDEVELOPMENT AGENCY, AND CITY RESPONSIBILITIES FOR THE IMPLEMENTATION
    OF THE COMMUNITY REDEVELOPMENT PLAN; AND PROVIDING FOR AN EFFECTIVE
    DATE.

5.  **ATTACHED EXHIBITS AND ADDITIONAL BACKUP MATERIALS (PLEASE LIST):**
    Resolution
    Staff Report

6.  **FOR PURCHASING REQUESTS ONLY: Dept: _____   Amount: $_____**

7.  **REVIEWED AND APPROVED FOR ADDITION ON AGENDA:**

    **Submitted by:**

    **Laurence G. Leeds, AICP, Director**          **Date    November 21, 2002**
    **Growth Management Department**

    _____          _____
    **City Manager**                                    **Date**



# CITY OF DANIA BEACH
# GROWTH MANAGEMENT DEPARTMENT
# STAFF REPORT

**TO:**      Ivan Pato, City Manager

**FROM:**   Laurence Leeds, AICP, Director
Growth Management Department

**RE:**      **CITY COMMISSION APPROVAL OF INTERLOCAL AGREEMENT (7:00 PM REGULAR COMMISSION MEETING)**

**DATE:**   November 22, 2002

The County Commission requires the City to enter into an interlocal agreement governing the relationship of the city and the county with respect to the CRA. County staff has indicated the interlocal agreement is a prerequisite to the City to establishing a trust fund. The City must set up a trust fund prior to January 1, 2003 in order to establish 2002 as the base year for the TIF.

Staff has been diligently working with County staff to reach consensus on the terms of the interlocal agreement. Staff has scheduled a meeting with County staff today in order to finalize these arrangements. As such, the interlocal may not be ready to be included in today's agenda package and may be delivered separately on Monday.

Please note that that interlocal must be approved prior to County Commission Meeting (December 3 or 10) in order for the County to grant the City of Dania Beach the authority to the trust fund.

**RECOMMENDATION**

Approval of Interlocal Agreement by the City Commission.

I certify this to be a true and correct copy
of _Resolution No. 2002-201_
WITNESS my hand and official seal of the
City of Dania Beach, Broward County, Florida
this _27_ day of _November_ _2002_
_____ City Clerk

RESOLUTION NO. 2002-201

A RESOLUTION OF THE CITY OF DANIA BEACH
ADOPTING RECITALS; APPROVING THE INTERLOCAL
AGREEMENT BETWEEN BROWARD COUNTY, THE
COMMUNITY REDEVELOPMENT AGENCY AND THE
CITY TO ESTABLISH COUNTY, COMMUNITY
REDEVELOPMENT AGENCY, AND CITY
RESPONSIBILITIES FOR THE IMPLEMENTATION OF THE
COMMUNITY REDEVELOPMENT PLAN; AND
PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, on June 25, 2002, the City of Dania Beach Commission (the "City Commission") accepted a delegation of powers from the Broward County Board of County Commissioners (the "County") regarding the establishment and implementation of a Community Redevelopment Plan; and

WHEREAS, the City Commission pursuant to the County's delegation and Section 163.357, Florida Statutes, has established itself to be the Community Redevelopment Agency ("CRA") for the City of Dania Beach by City Ordinance No. 2002-032 (a copy is attached hereto as Exhibit A and incorporated by reference); and

WHEREAS, the City Commission pursuant to the County delegation and Section 163.360, Florida Statutes, has approved a Community Redevelopment Plan to enable the City to undertake redevelopment in the Downtown Dania Beach District Area (City Resolution No. 2002-163, attached as Exhibit B hereto and incorporated by reference); and

WHEREAS, the City Commission, the CRA and the County together desire to enter into an agreement of understanding to delineate areas of responsibility with respect to redevelopment of the Downtown Dania Beach District Area taken pursuant to the Community Redevelopment Plan; and

WHEREAS, the City Manager has negotiated with the County for consideration and ultimate approval by the City Commission.

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF DANIA BEACH, FLORIDA:

Section 1.    Recitals.   That the recitals contained in the preamble to this Resolution are incorporated by reference into it.

Section 2.     Approval.     That the City Commission hereby approves the Interlocal Cooperation Agreement attached hereto as Exhibit C.

Section 3.     Effective Date.     That this Resolution shall become effective immediately upon its passage and adoption.

PASSED AND ADOPTED ON THIS 26TH DAY OF NOVEMBER, 2002.

ROBERT H. CHUNN, JR.
MAYOR-COMMISSIONER

ROLL CALL:
COMMISSIONER BERTINO-  YES
COMMISSIONER MCELYEA-  YES
COMMISSIONER MIKES-  YES
VICE-MAYOR FLURY-  YES
MAYOR CHUNN-  YES

ATTEST:

CHARLENE JOHNSON
CITY CLERK

APPROVED AS TO FORM AND CORRECTNESS:

THOMAS J. ANSBRO
CITY ATTORNEY

2                    RESOLUTION NO. 2002-201

ORDINANCE NO. 2002-032

AN ORDINANCE OF THE CITY OF DANIA BEACH, FLORIDA DECLARING THE DANIA BEACH CITY COMMISSION TO BE THE "DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY EXECUTIVE BOARD"; DEFINING GENERALLY THE PURPOSES AND DUTIES OF SUCH BOARD; PROVIDING FOR CONFLICTS, FURTHER, PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the City Commission of the City of Dania Beach commissioned a "Finding of Necessity for Redevelopment Study" ("Study"), a copy of which is attached to and made a part of this ORDINANCE as Exhibit "A," to determine whether any portions of the City of Dania Beach display sufficient indications of blight, as required by the statutes, to warrant designation of the area as a "community redevelopment area"; and

WHEREAS, said Study was prepared consistent with the requirements of Chapter 163, Part III, Florida Statutes and approved by the Dania Beach City Commission on June 26, 2001 by the adoption of Resolution No. 2001-115, and

WHEREAS, said Study was approved by the Broward County Board of County Commissioners on March 19, 2002 via Resolution No. 2002-275, a copy of which is attached to and made a part of this ORDINANCE as Exhibit "B"; and

WHEREAS, County Resolution No. 2002-275 delegates a number of responsibilities under the Community Redevelopment Act of 1969 to the City of Dania Beach, including the authority to declare the City Commission to be the "Community Redevelopment Agency;" and

WHEREAS, the City Commission wishes to comply with the County delegation of authority and designate itself as the "Community Redevelopment Agency" for the City of Dania Beach;

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF DANIA BEACH, FLORIDA:

Section 1.    That the City Commission is hereby declared to be the Dania Beach Community Redevelopment Agency Executive Board.

Section 2.    That said board shall have five (5) members who shall be City Commissioners of the City of Dania Beach.

Section 3.    That all Ordinances or parts of Ordinances in conflict with this Ordinance are repealed to the extent of such conflict.

Section 4.    That this Ordinance shall be in force and take effect immediately upon its passage and adoption.

PASSED and ADOPTED on first reading this 11th day of June, 2002.

PASSED and ADOPTED on second reading this 25th day of June, 2002.

ROBERT H CHUNN, JR.
MAYOR – COMMISSIONER

ATTEST:

CHARLENE JOHNSON
CITY CLERK

ROLL CALL:
COMMISSIONER BERTINO  - YES
COMMISSIONER MCELYEA - YES
COMMISSIONER MIKES - YES
VICE-MAYOR FLURY - YES
MAYOR CHUNN - YES

APPROVED AS TO FORM AND CORRECTNESS:

BY:

THOMAS J. ANSBRO
CITY ATTORNEY

ORDINANCE NO. 2002-032

**INTERLOCAL COOPERATION AGREEMENT**

THIS INTERLOCAL COOPERATION AGREEMENT (the "Agreement"), made this _____ day of

_____, 2002, by and between Broward County, Florida, a political subdivision of the State

of Florida (the "County"), the City of Dania Beach, Florida, a municipal corporation under the laws of the

State of Florida (the "City") and the Dania Beach Community Redevelopment Agency ("CRA"), or its

successor, a public body corporate and politic (the "CRA").

WHEREAS, the Board of County Commissioners of Broward County, Florida (the "Board")

adopted Resolution No. 2002-275 on March 19, 2002, which, among other things, declared that a slum or

blighted area exists in a geographic area, described in Resolution No. 2001-115 of the City, attached

hereto and made a part hereof as Attachment "A" (The "Redevelopment Area"), the criteria of which

presented by the City, in the aggregate, demonstrated that it is necessary to redevelop such

Redevelopment Area in accordance with the provisions of Part III of Chapter 163, Florida Statutes (the

"Act"); and

WHEREAS, the Board delegated to the City Commission of the City of Dania Beach, Florida (the

"City Commission") the authority to exercise the redevelopment powers conferred upon the Board within

the Redevelopment Area in accordance with the Act to enable the City Commission to declare the need

for, create and delegate power to a community redevelopment agency and to initiate, prepare and adopt

a plan of redevelopment for final approval by the Board; and

WHEREAS, the City Commission, pursuant to Resolution No. 2002-032 enacted on June 25,

2002, accepted a delegation of powers from the Board, found a need for and created the CRA, granted

the CRA the power to exercise those powers permitted by the Act which were delegated by the Board to

the CRA and directed the initiation, preparation and adoption of a community redevelopment plan by the

CRA; and

WHEREAS, pursuant to Resolution No. 2002-163 enacted by the Dania Beach Community

Redevelopment Agency, the CRA has approved the Community Redevelopment Plan (the "Plan") to

enable the City to undertake redevelopment of the Redevelopment Area; and

WHEREAS, there shall be established for the CRA created under the Act, a redevelopment trust fund (the "Fund"); and

WHEREAS, the boundaries identified for the Redevelopment Area are within the corporate limits of the City; and

WHEREAS, the City played the major role in the preparation of the Plan; and

WHEREAS, the County, the City and the CRA desire to enter into an agreement of understanding to delineate their areas of responsibility with respect to the redevelopment of the Redevelopment Area, exclusively known as the "Downtown Dania Beach District Area," and the CRA's obligations and responsibilities to each taxing authority.

WITNESSETH, that for and in consideration of the mutual covenants and agreements contained herein, the County, the City and the CRA agree as follows:

Implementation of the Plan

A.      The County, the City and the CRA hereby expressly agree that the Plan as approved by the Board pursuant to Resolution No. _____ is for a forty (40) year period for purposes of completing the project as outlined in the Plan.  The CRA agrees that no later than December 31, 2003, and no later than December 31 of each following year, the CRA shall submit to the County, in addition to the requirements of Section 163.356(3)(c), Fla. Stat., a detailed report of the progress made in carrying out the Redevelopment Plan.

The detailed report of the progress made in carrying out the Redevelopment Plan is to include time frames and benchmarks, including, but not limited to, changes in tax increment payments, enhancements to the tax base, any leverage of private or non-ad valorem funds, costs and revenues, growth in new business, reduction of incompatible land uses or code violations, improvements to infrastructure, and ongoing benefits to the larger community.

The County shall review the progress report and determine if the Redevelopment Plan, or as amended, has progressed in a satisfactory manner.  At the request of the County, the CRA shall submit additional progress reports on the Plan and Redevelopment area activities.

2

If the County determines, based on submissions and performance by the City and/or CRA that progress is unsatisfactory, the City, the CRA and the County shall work jointly to provide a corrective plan of action. Unsatisfactory performance is defined as failure to accomplish four (4) or more projects within the timeframes established in the Community Redevelopment Plan, or as amended. If the corrective plan of action and/or performance by the City and the CRA have not improved to a satisfactory level within a defined time frame, the City and the CRA agree to not issue additional debt or restructure debt without the expressed approval of the County. Further, the City and/or CRA shall be required to provide the County with quarterly reports on corrective actions taken until the CRA's performance has improved to a satisfactory level, as determined by the County Administrator.  The City and/or the CRA, without expressed approval of the County, shall not have the right to replace any cash in debt service reserve with a debt service reserve surety during the period in which the CRA is deemed by the County to have unsatisfactory performance levels.

Should an amendment to this Agreement be required, the CRA and the City, as the case may be, may only continue to exercise the powers conferred by the Board to such entity pursuant to this Agreement, Resolution No. _____,  and in strict conformity with the requirements of Chap. 163, Part III, Florida Statutes.

The CRA and the City shall be responsible solely for the negligence, respectively, of the CRA and the City's agents, servants and employees.  County shall be responsible solely for the negligence of County's agents, servants and employees.

The size of the proposed CRA shall be limited to 508 acres, which is nine point four percent (9.4%) of the City's land area at the time of execution of this agreement.

B.     CRA Financing

The City and the CRA expressly agrees that County tax increments from the CRA shall not be used for administrative purposes.  It is further agreed, subject to the terms and conditions contained herein, to use County tax increments from the Dania Beach CRA only for construction of public improvements which are necessary to the successful implementation of the Community Redevelopment Plan, or as amended.

The CRA also agrees to comply with all the terms and conditions of Broward County Resolution No. 2002-275, which is attached hereto as Attachment "B" and incorporated by reference.

The City is willing to cooperate with the County to maximize the net fiscal impact from the proposed CRA by limiting the County's contributions via tax increment revenues to an amount and term that are mutually agreed to in order to meet the minimum requirements of the adopted development and financial plans.

The City, either directly or through the CRA, shall establish and maintain the Fund, as required by applicable law.  Both the City and the County shall deposit annually into the Fund an amount equal to ninety-five percent (95%) of the increment from ad valorem taxes collected within the Redevelopment Area pursuant to Section 163.387, Florida Statutes, and other provisions of applicable law.

The City, either directly or through the CRA, shall develop and promulgate rules, regulations and criteria whereby the Fund may be promptly and effectively administered, including the establishment and the maintenance of books and records and adoption of procedures whereby the City may, either directly or through the CRA, expeditiously and without undue delay, utilize such funds in accordance with the approved budget for the Redevelopment Area.

The City, either directly or through the CRA, shall select financial and legal consultants as necessary to assist in the preparation of the tax increment financing plans.  The City and the CRA shall encourage the participation of and utilization of small and minority businesses, specifically with respect to financial advisor, bond counsel, underwriters' counsel, underwriting services, and other consultants in the development of the Redevelopment Area.

The City, either directly or through the CRA, may sell bonds and execute notes and other forms of indebtedness, as well as collateral documents, to finance capital improvements deemed necessary for the Redevelopment Area.  The City or CRA will advise the County as to amount, duration and purpose of such bonds, notes or other indebtedness, including advances pledging or obligating tax increment revenues.

4

However, in furtherance of Resolution No. 99-1398, duly adopted by the Board on October 5, 1999, County approval is required in the event that any changes to the Redevelopment Plan would result in a boundary change, an extension of the term of the Redevelopment Plan or a change to the Redevelopment Plan of such magnitude as would require a County or municipal land use plan amendment which is not currently addressed in the Plan adopted by the City Commission September 24, 2002, prior to issuance of any such bond, note or other form of indebtedness including advances pledging or obligating tax increment revenue.   The foregoing shall not apply to municipal land use plan amendments that assign flexibility units or reserve units.

The County's obligation to annually appropriate to the Fund shall continue until all loans, advances and indebtedness, if any, and interest thereon, of the CRA incurred as a result of redevelopment in the Redevelopment Area have been paid, or for as long as required by applicable law, or until all capital projects in the Plan, or as amended, have been completed, which ever is later.  In no year shall the County's obligation to the Fund exceed the amount of that year's tax increment as determined pursuant to Resolution No. _____.   On the last day of the fiscal year of the CRA, any money which remains in the Fund after payment of expenses pursuant to Section 163.387(6), Florida Statutes, for such year shall be: (1) returned to each taxing authority which paid any tax increment revenues generated in excess of minimum revenue coverage of debt service requirements or utilized to accelerate the repayment of outstanding principal in the proportion that the amount of the payment of such taxing authority bears to the total amount paid into the Fund by all taxing authorities within the Redevelopment Area for that year; or (2) used to reduce the amount of any indebtedness to which increment revenues are pledged; or (3) deposited into a CRA Trust account for the purpose of later reducing any indebtedness to which increment revenues are pledged; or (4) appropriated to a specific redevelopment project pursuant to the approved Plan, or as amended, which project will be completed within three (3) years from the date of such appropriation.

<u>City/County Coordination</u>

The County Administrator, or designee, shall designate a Redevelopment Area Coordinator (the "Redevelopment Area Coordinator") or designee.

The Redevelopment Area Coordinator or designee shall serve as the County's liaison to the City and the CRA for the Redevelopment Area. The Redevelopment Area Coordinator or designee shall carry out the day-to-day County responsibilities for the Redevelopment Area and shall be the designated person to receive all data and reports pertaining to the Plan.

The City, either directly or through the CRA, shall be responsible for implementing and conforming to the Plan, including developing and implementing proposals for indebtedness and bond financing, acquisition, disposition and relocation activities, eminent domain activities (subject to the limitations contained herein), coordination and implementation of the design and construction of public improvements necessary to support the redevelopment of the Redevelopment Area, and such other projects and activities as are contemplated by the Plan. The CRA shall establish a "critical path time line" for the anticipated major projects. The CRA shall further agree to institute tax increment financing only after firm financial commitments are in place. A "firm financial commitment" as defined herein shall include a legal commitment approved by the CRA for the purchase or transfer of CRA owned land for the purpose of economic development or programming by the CRA of funds of any public improvements in the Plan, or as amended. The CRA shall deliver copies of all accepted proposals for the Redevelopment Area to the Redevelopment Area Coordinator or designee.

The Redevelopment Area Coordinator or designee shall submit all proposals related to amendments to the Plan and proposals for indebtedness and bond financing to the County Administrator, or designee, and the County may review and make recommendations on modifications and amendments to the Plan and all proposals for indebtedness and bond financing for the Redevelopment Area. The CRA shall have complete authority to use eminent domain powers to implement the Plan.

The annual budget shall be submitted to the County not later than thirty (30) days prior to the beginning of each County fiscal year in a format approved by the County. The annual budget for the CRA and the Redevelopment Area shall include a detailed capital infrastructure budget and shall be subject to full review by the County.

With respect to any substantial amendments and modifications to the Plan, such amendments and modifications shall become a part of the Plan, and the powers delegated to the City Commission pursuant to this Agreement shall be exercisable either directly or through the CRA, with respect to such amendments and modifications, only after said changes have been duly approved by the County. Amendments and modifications are defined in accordance with Resolution No. 99-1398, duly adopted by the Board on October 5, 1999, to include boundary changes, an extension to the term of the Plan involving the continuing contribution by the taxing authorities beyond the original Plan adoption and a change to the Plan of such magnitude as would require a county or municipal land use plan amendment which is not currently addressed in the Plan adopted by the City Commission September 24, 2002. The foregoing shall not apply to municipal land use plan amendments that assign flexibility units or reserve units.

Other Redevelopment Area Activities

The City, either directly or through the CRA, shall be responsible for the administration and funding of all relocation activities. Three months prior to the commencement of redevelopment activities which may result in the displacement of persons from residential homes, the City, either directly or through the CRA, shall establish residential relocation procedures for the relocation of such persons (the "Local Relocation Procedures") and shall submit such Local Relocation Procedures to the Board for review. In addition to any applicable federal or State laws, the Local Relocation Procedures shall apply in all relocation cases within the Redevelopment Area; provided, however, if federal funds are received by the City, either directly or through the CRA, for the project which requires residential relocation, the City, either directly or through the CRA, shall follow the relocation procedures set forth in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 United States Code, Chapter 61, Section 4601, et seq. The City or the CRA may contract with County agencies to assist in residential relocation.

The CRA agrees to submit a Local Activity Center ("LAC") Comprehensive Plan Amendment by October 1, 2003 that will include a provision for allowing additional residential dwelling units in the LAC portion of the Redevelopment Area.

7

The City, either directly or through the CRA, shall cause an independent audit by a Certified Public Accounting firm to be performed on an annual basis, in compliance with 163.356, Florida Statutes, to be forwarded to the Board within sixty (60) days of completion.

All redevelopment activities conducted with respect to the Redevelopment Area shall be in conformance with the Plan, or as the same may be amended. Any amendments to the Plan as required by Section 163.361, Florida Statutes, must have prior approval of the Board before the City, either directly or through the CRA, may implement the changes contemplated by the amendments. Once approved, however, the City, either directly or through the CRA, may implement the amendments thereto.

The City or the CRA, as the case may be, shall include language in any loan agreement, grant agreement or other agreements or contracts entered into between the City or the CRA and business involved in the redevelopment effort of the Redevelopment Area, which language states that, as a condition to the business' receipt of monies or incentives from the City or the CRA, any new jobs created as a result of the redevelopment shall be awarded in such a manner, where possible, to promote the hiring of employees that reflect a racially and ethnically-diverse employment base.

<u>Citizen Participation</u>

To carry out the citizen participation process, the City, either directly or through the CRA, shall utilize community groups and seek community involvement and consider citizen input in the development of Redevelopment Area activities.

The City, either directly or through the CRA, shall create or establish an advisory board the composition of which shall be racially and ethnically diverse and shall include citizens who reside and/or work in the City or are other professionals who may give technical advice to the CRA, in accordance with applicable law. The advisory board shall be charged with monitoring the CRA for compliance with the objectives enumerated in the Plan. The advisory board shall conduct a comprehensive review of the CRA and the City's accomplishments with respect to the Plan. This review shall be done at least every five (5) years and its finding shall be forwarded to the Board for review.

Project Management, Administration and Coordination

The City and the CRA shall consider any reasonable request of the County with respect to implementing any plan of action related to the Plan. The CRA shall develop implementation schedules and timetables for all significant Redevelopment Area activities as determined by the CRA, copies of which shall be delivered to the Redevelopment Area Coordinator or designee beginning one year from the execution date of this Agreement.

The Redevelopment Area Coordinator or designee shall receive from the CRA advance notice of all public meetings related to development of projects pursuant to this Agreement and on a regular basis, information regarding the progress of all such development through the design and construction of such projects.

During construction, the County shall have the right to attend all such public meetings and inspect the projects being developed at all reasonable times, subject to reasonable restrictions imposed by the contractor.

The City and/or the CRA shall consult regularly with the Redevelopment Area Coordinator or designee in order to keep the County reasonably informed throughout the duration of the planning, design and construction of such redevelopment projects. The City, either directly or through the CRA, shall be required to have an outside independent audit on the annual basis, at its expense, to monitor and investigate compliance with the terms of this Agreement. The right of the auditor to investigate, monitor, inspect, copy, review, verify and check operations and records of the City and the CRA shall include, but not be limited to, all of the records of its employees, consultants, agents or authorized contractors and subcontractors, as well as, all administrative and operational facilities used by the City, the CRA and the County in connection with all matters arising under this Agreement. Records include, but are not limited to, construction, financial, correspondence, instructions, memoranda, bids and contract documents, as well as all other records pertaining to the planning, development and construction of projects pursuant to this Agreement. Any rights that the County has under this provision shall not be the basis for any liability to accrue to the County from the City, the CRA or third parties for such investigation or for the failure to have conducted such investigation.

Transportation Planning

The CRA will keep the County closely advised of progress in planning, designing and constructing the transportation improvements proposed in the Plan, as amended. This will include prior notice of, and invitation to, project meetings with FDOT and other applicable agencies.

City Assurances Regarding the Inclusion of Small and Minority Businesses

As part of this Agreement, the City and the CRA, as the case may be, shall follow applicable federal, State and County laws with regard to race/ethnic/gender conscious concerns. The City and CRA shall support and encourage the inclusion of small and minority businesses, where possible, in the CRA's contracting of goods and services including construction activity.

Amendments

This Agreement may be amended only by a written agreement signed by the City, the CRA and the County.

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement on the respective dates under each signature: BROWARD COUNTY through its BOARD OF COUNTY COMMISSIONERS, signing by and through its Chair or Vice Chair, authorized to execute same by Board action on the _____ day of _____, 20___; and the CITY OF _____, signing by and through its _____, duly authorized to execute same, and the DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY, signing by and through its _____, duly authorized to execute same.

**COUNTY**

ATTEST:

BROWARD COUNTY, through its
BOARD OF COUNTY COMMISSIONERS

_____

By_____
                                    Chair

County Administrator and Ex-
Officio Clerk of the Board of
County Commissioners of Broward
County, Florida

____ day of _____, 20___

Approved as to form
Office of County Attorney
Broward County, Florida
Governmental Center, Suite 423
115 South Andrews Avenue
Fort Lauderdale, Florida 33301
Telephone:  (954) 357-7600
Telecopier: (954) 357-6968

By_____
     Assistant County Attorney

____ day of _____, 20___

**CITY OF DANIA BEACH CITY COMMISSION**

WITNESSES:

ATTEST:

City Clerk

CITY OF DANIA BEACH CITY COMMISSION

By _____
Mayor

26 day of November, 20 02

By _____
         City Manager

26 day of November, 20 02

APPROVED AS TO FORM:

By _____
      City Attorney

**CITY OF DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY**

WITNESSES:

ATTEST:

City Clerk

CITY OF DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

By _____
Chairman

26 day of November, 20 02

By _____
         City Manager

26 day of November, 20 02

APPROVED AS TO FORM:

By _____
      City Attorney

# RESOLUTION NO. 2001-115

**A RESOLUTION OF THE CITY OF DANIA BEACH, FLORIDA, PERTAINING TO A PROPOSED COMMUNITY REDEVELOPMENT AREA, SUCH RESOLUTION BEING PROMULGATED PURSUANT TO §163.355, FLORIDA STATUTES, AND SECTION 18.86, BROWARD COUNTY ADMINISTRATIVE CODE; APPROVING A SLUM AND BLIGHT STUDY; DEFINING THE REDEVELOPMENT AREA; DETERMINING THAT THE REDEVELOPMENT AREA SUFFERS FROM ONE OR MORE INDICATORS OF BLIGHT; DETERMINING THAT THE REDEVELOPMENT AREA IS APPROPRIATE AND CRITICALLY NECESSARY IN THE INTEREST OF THE PUBLIC HEALTH, SAFETY, MORALS, AND WELFARE OF THE RESIDENTS OF THE CITY; MAKING CERTAIN OTHER REQUIRED FINDINGS AND DETERMINATIONS AND PROVIDING EFFECTIVE DATE.**

WHEREAS, blight constitutes a serious menace injurious to the public health, safety, morals and welfare of the City, imposing onerous burdens which decrease the tax base and reduce tax revenues, substantially impairing or arresting sound growth, aggravating traffic problems and substantially hampering the elimination of traffic hazards and the improvement of traffic facilities, and increasing the costs of providing public services to blighted areas; and

WHEREAS, Chapter 163, Part III, Florida Statutes, requires the following findings to be made in order to designate a portion of the City as a "community redevelopment area":

(1) One or more slum or blighted areas, or one or more areas in which there is a shortage of housing affordable to residents of low or moderate income, including the elderly, exist in such county or municipality; and,

(2) The rehabilitation, conservation, or redevelopment, or a combination thereof, of such area or areas, including, if appropriate, the development of housing which residents of low or moderate income, including the elderly, can afford, is necessary in the interest of the public health, safety, morals, or welfare of the residents of such county or municipality.

; and

WHEREAS, the City Commission of the City of Dania Beach commissioned a "Finding of Necessity for Redevelopment Study" ("Study"), a copy of which is attached to and made a part of this Resolution as Exhibit "A," to determine whether any portions of the City of Dania Beach display sufficient indications of blight, as required by the statutes, to warrant designation of the area as a "community redevelopment area"; and

WHEREAS, while the City has determined that the area identified in Figure 2 of the Study ("Proposed CRA") demonstrates conditions of blight, the area can be conserved and rehabilitated through appropriate public action as authorized under the Florida statutes and Broward County Administrative Code, which will preserve and enhance the tax base for the benefit of all taxing authorities; and

WHEREAS, Broward County is a charter county and is authorized under Florida law to delegate such powers provided in Part III of Section 163 to the governing bodies of municipalities within the County; and

WHEREAS, Section 18.86 of Broward County's Administrative Code provides additional procedures and requirements for creating community redevelopment agencies within the County; and

WHEREAS, the Study shall constitute the "Slum and Blight study" required by Broward County;

NOW THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF DANIA BEACH, BROWARD COUNTY, FLORIDA, as follows:

Section 1. Recitals.

The recitals contained in the preamble to this Resolution are incorporated by reference into it.

Section 2. Findings.

The City Commission finds:

(a)  Based upon the facts and evidence presented to and considered by the City Commission, the following conditions exist in the Proposed CRA:

1. Conditions are present in the Proposed CRA that are detrimental to the sound growth of the City and substantially impair or arrest the growth of the City and present conditions and uses in the Proposed CRA that are detrimental to the public health, safety, morals and public welfare;

2. There is a predominance of defective or inadequate street layout;

3. Lot layouts in the Proposed CRA are faulty in relation to their size, adequacy, accessibility, or usefulness;

4. There are examples of unsanitary and unsafe conditions;

5. There are examples of deterioration of site and other improvements;

6. There are inadequate and outdated building density patterns;

7. There are inadequate transportation and parking facilities;

8. There is a diversity of ownership and defective or unusual conditions of title are present that prevent the free alienability of land within the deteriorated or hazardous area.

(b)   The notices required by Section 163.346, Florida Statutes, have been timely published or mailed in accordance with that statute.

(c)   Action must be taken immediately to prevent further blight and deterioration and to protect and enhance public expenditures previously made in the Proposed CRA.

(d)   The preservation or enhancement of the tax base from which a taxing authority realizes tax revenues is essential to its existence and financial health; that the preservation and enhancement of such tax base is implicit in the purposes for which a taxing authority is established; that tax increment financing is an effective method of achieving such preservation and enhancement in areas in which such tax base is declining; that community redevelopment in such areas, when complete, will enhance such tax base and provide increased tax revenues to all affected taxing authorities, increasing their ability to accomplish their other respective purposes; and that the preservation and enhancement of the tax base in such areas through tax increment financing and the levying of taxes by such taxing authorities therefor and the appropriation of funds to a redevelopment trust fund bears a substantial relation to the purposes of such taxing authorities and is for their respective purposes and concerns.

Section 3.  Finding of Necessity.

The City Commission, based upon evidence presented to it and in the public record, finds that a "blighted area", as defined in the Florida Statutes, exists in the Proposed CRA Area since the Area is deteriorating and economically distressed due to outdated building density patterns, inadequate transportation and parking facilities, faulty lot layout or inadequate street layout and does further find that the rehabilitation, conservation or development or a combination thereof, of such Area described is necessary in the interest of the public health, safety, morals or welfare of the residents of the City of Dania Beach, Florida, and that such area is appropriate for designation as a "community redevelopment area" as defined by Florida Statutes.

Section 4.  County Approval.

The City requests that the Board of County Commissioners of Broward County delegate the exercise of all powers and responsibilities conferred upon Broward County by §163.410, Florida Statutes to the City of Dania Beach for the purpose of establishing a Community Redevelopment Agency and the preparation of a Redevelopment Plan to be submitted to the County for approval.

Section 5.  Severability.

If any section or portion of a section of this resolution proves to be invalid, unlawful, or unconstitutional, it shall not be held to invalidate or impair the validity, force, or effect of any other section or part of this resolution.

Section 6.  Effective Date.

This resolution shall become effective immediately upon its passage and adoption.

PASSED AND ADOPTED ON 26TH DAY OF JUNE, 2001.

PAT FLURY
MAYOR-COMMISSIONER

ATTEST:

CHARLENE JOHNSON
ACTING CITY CLERK

ROLL CALL:
COMMISSIONER BERTINO-YES
COMMISSIONER MIKES-YES
COMMISSIONER McELYEA-NO
VICE-MAYOR CHUNN-YES
MAYOR FLURY-YES

APPROVED AS TO FORM AND
CORRECTNESS:

THOMAS J. ANSBRO, CITY ATTORNEY

EXHIBIT

## Resolution 2002-275

A RESOLUTION OF THE BOARD OF COUNTY COMMISSIONERS OF BROWARD COUNTY, FLORIDA, DELEGATING TO AND CONFERRING UPON THE CITY OF DANIA BEACH, FLORIDA, CERTAIN POWERS TO CREATE A COMMUNITY REDEVELOPMENT AGENCY AND TO PREPARE A COMMUNITY REDEVELOPMENT PLAN PURSUANT TO CHAPTER 163, PART III, FLORIDA STATUTES, THE COMMUNITY REDEVELOPMENT ACT OF 1969, AS AMENDED, AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the City of Dania Beach, Florida ("City"), is desirous of utilizing the community redevelopment powers specified in Part III, Chapter 163, Florida Statutes, the Community Redevelopment Act of 1969, as amended; and

WHEREAS, pursuant to Section 163.410, Florida Statutes, the City has officially requested the Board of County Commissioners of Broward County, Florida ("County"), to delegate and confer upon the City Commission of Dania Beach, Florida, the authority to create a Community Redevelopment agency pursuant to the Community Redevelopment Act of 1969, as amended for the rehabilitation, conservation, or redevelopment of a certain blighted area within the municipal jurisdiction of said City; and

WHEREAS, the County has reviewed the findings of Slum and Blight by the City and the County finds that in the aggregate, it meets the County and State criteria for the County to delegate the authority to the City to create a Community Redevelopment Agency and to prepare a Community Redevelopment Plan; and

WHEREAS, the City and the County strongly believe that the City's preemptive intervention to reverse the deteriorating economic conditions will benefit both the City and the County and accordingly desire to cooperate to find the means to accomplish the City's

EXHIBIT A

redevelopment objectives through strategies that yield the most financially beneficial position for the residents of the City and the County; and

WHEREAS, the Board of County Commissioners of Broward County desires to delegate to the City Commission of the City of Dania Beach, Florida, only those powers necessary to create the Community Redevelopment Agency and to prepare a Community Redevelopment Plan pursuant to the Community Redevelopment Act of 1969, as amended; NOW THEREFORE,

BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF BROWARD COUNTY, FLORIDA:

Section 1. That the Board of County Commissioners of Broward County, Florida, hereby delegates to the City Commission of the City of Dania Beach, Florida, only those authorities as set forth below along with the attendant responsibilities as set forth in the Community Redevelopment Act of 1969, as amended:

1.1 To make a finding that there is a need for a community redevelopment agency ("agency") to function in the City.

1.2 To adopt a resolution declaring the need for an agency in the City.

1.3 To create an agency.

1.4 To appoint a board of commissioners of the agency.

1.5 To designate a chair and vice chair from among the commissioners appointed to the agency.

1.6 To employ an executive director, technical experts and such other agents and employees it deems necessary for the agency.

1.7 To employ or retain legal counsel and staff.

2

EXHIBIT A

1.8   To appropriate to the agency, from City funds, such amounts as the City deems necessary for the administrative expenses and overhead of the agency.

1.9   To remove a commissioner from the agency.

1.10   To declare the City Commission to be the agency.

1.11   To prepare a community redevelopment plan.

Section 2.  That the City and County will enter into an agreement of understanding outlining a number of issues in connection with the proposed CRA's obligations and responsibilities to each taxing authority, including:

2.1   Limiting the size of the proposed Dania Beach CRA area to 508 acres, which is approximately 9.4% of the City's land area.

2.2   Using tax increments from the Dania Beach CRA only for construction of public improvements loans/grants, infrastructure improvements, land acquisition, technical studies, operations, administration and other expenditures directly related to successful development and the implementation of the approved Community Redevelopment Plan.

2.3   Establishing a "Critical Path Timeline" for the Dania Beach CRA project (s).

2.4   Agreeing to institute tax increment financing only after necessary financial commitments are in place for a Phase I project of not less than an amount of square footage provided in the Agreement of Understanding.

2.5   Agreeing to explore and financially support alternative financing for CRA projects, where possible, before utilizing tax increment financing.

3

EXHIBIT A

Section 3.  That the City is willing to cooperate with the County to maximize the net fiscal impact from the proposed CRA by including the following restrictions/covenants in the Agreement of Understanding:

3.1    Limit the County's contributions via tax increment revenues to a percentage and term that are mutually agreed to in order to meet the financial needs of the adopted development and financial plans over the life of the CRA.

3.2    Within 30 days following the end of each fiscal year, the City and the County, through consultation, will determine whether any money remaining in the Trust Fund after payment of expenses pursuant to applicable law can be returned to the appropriate taxing authority, used to reduce the amount of indebtedness, or appropriated to a specific CRA-approved project as per the Community Redevelopment Plan.

Section 4.    That this Resolution shall take effect immediately upon its adoption.

ADOPTED this 19th day of March, 2002. #61

4

EXHIBIT A

1

2

3

4  CLK/lt
   #02-112
5  3/12/02
   C:\WINDOWS\TEMP\DaniaBeachResCl.wpd
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

5

STATE OF FLORIDA )

                    ) SS

COUNTY OF BROWARD )

         I, ROGER J. DESJARLAIS, County Administrator, in and for Broward County, Florida, and Ex-Officio Clerk of the Board of County Commissioners of said County, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of Resolution 2002-275 as the same appears of record in the minutes of a said meeting of said Board of County Commissioners held on the 19th day of March, 2002.

         IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 26th day of March, 2002.



ROGER J. DESJARLAIS
COUNTY ADMINISTRATOR

By _Mary Anne Daly_
Deputy Clerk

(S E A L)

## RESOLUTION NO. 2002-163

A RESOLUTION OF THE CITY COMMISSION OF DANIA BEACH, FLORIDA, PROVIDING FOR FINDINGS OF FACT RELATING TO A COMMUNITY REDEVELOPMENT PLAN; ADOPTING A COMMUNITY REDEVELOPMENT PLAN FOR THE COMMUNITY REDEVELOPMENT AREA OF THE CITY OF DANIA BEACH; PROVIDING FOR SEVERABILITY; FURTHER, PROVIDING FOR AN EFFECTIVE DATE.

**WHEREAS,** the City Commission of the City of Dania Beach, Florida made certain findings and declarations as set forth in Resolution No. 2001-15, adopted June 26, 2001, the "Resolution of Necessity", as required by Chapter 163, Florida Statutes; and

**WHEREAS,** the City Commission of the City of Dania Beach, Florida, by the adoption of this Resolution reaffirms such findings and declarations; and

**WHEREAS,** the City Commission of the City of Dania Beach, Florida established by the adoption of Ordinance No. 2002-032 (adopted on June 25, 2002), the "Dania Beach Community Redevelopment Agency" to, among other things, cause to be prepared a community redevelopment plan; and

**WHEREAS,** the Dania Beach Planning and Zoning Board, the local planning agency for the City of Dania Beach, at its August 21, 2001 meeting found the Community Redevelopment Plan to be in conformity with the Dania Beach Comprehensive Plan; and

**WHEREAS,** the Dania Beach Community Redevelopment Agency has approved the Community Redevelopment Plan and submitted the plan to the City Commission recommending that the City Commission approve the Community Redevelopment Plan; and

**WHEREAS,** pursuant to law, notice has been given in a newspaper of general circulation in the City notifying the public of the proposed plan adoption and of a public hearing to consider that matter; and

1                    RESOLUTION NO. 2002-163

**WHEREAS,** the City has, before the public hearing, provided notice to each taxing authority which levies ad valorem taxes on taxable real property contained within the geographic boundaries of the redevelopment area, notifying the taxing authorities of the public hearing scheduled to consider the proposed plan adoption; and

**WHEREAS,** a public hearing before the City Commission was held pursuant to the published notice and notice described above in which hearing the parties in interest and all other citizens so desiring had an opportunity to be heard;

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF DANIA BEACH, FLORIDA:**

**Section 1.**  That the City Commission of the City of Dania Beach, Florida, finds that the Plan provides for the following:

a.  A feasible method for the location of families who will be displaced from the Community Redevelopment Area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families;

b.  The Community Redevelopment Plan conforms to the applicable Comprehensive Plan;

c.  The Community Redevelopment Plan gives due consideration to the use of community policing innovations and to the provision of adequate park and recreational areas and facilities that may be desirable for neighborhood improvement, with special consideration for the health, safety and welfare of children residing in the Community Redevelopment Area; and

d.  The Community Redevelopment Plan affords maximum opportunity, consistent with the sound needs of the City as a whole, for the rehabilitation and redevelopment of the Community Redevelopment Area by private enterprise; and

e.  The Community Redevelopment Plan and resulting revitalization and redevelopment for portions of the nearby coastal areas that may be deteriorating

RESOLUTION NO. 2002-163

and economically distressed will reduce or maintain evacuation time, as appropriate, and ensure protection for property against exposure to natural disasters.

**Section 2.**   That the City Commission of the City of Dania Beach, Florida hereby adopts and approves the Community Redevelopment Plan presented by the Community Redevelopment Agency and attached hereto as Exhibit "A".

**Section 3.**   That all resolutions or parts of resolutions in conflict with this resolution are repealed to the extent of such conflict.

**Section 4.**    That this resolution shall be in force and take effect immediately upon its passage and adoption.

PASSED AND ADOPTED ON SEPTEMBER 24, 2002.

ATTEST:

CHARLENE JOHNSON
CITY CLERK

ROBERT H. CHUNN, JR.
MAYOR – COMMISSIONER

ROLL CALL:
COMMISSIONER BERTINO -
COMMISSIONER MCELYEA -
COMMISSIONER MIKES -
VICE-MAYOR FLURY -
MAYOR CHUNN -

APPROVED AS TO FORM AND CORRECTNESS:

BY:
THOMAS J. ANSBRO
CITY ATTORNEY

3                    RESOLUTION NO. 2002-163

EXHIBIT "A"
CITY OF DANIA BEACH CRA LEGAL DESCRIPTION

PORTION OF SECTIONS 34 and 35, TOWNSHIP 50 SOUTH, RANGE 42 EAST AND A PORTION OF SECTION 3, TOWNSHIP 51 SOUTH, RANGE 42 EAST, BROWARD COUNTY, FLORIDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF SAID SECTION 34; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID SECTION TO THE NORTH RIGHT OF WAY LINE OF DANIA BEACH BOULEVARD (STATE ROAD A-1-A); THENCE EASTERLY ALONG SAID NORTH RIGHT OF WAY LINE OF DANIA BEACH BOULEVARD (STATE ROAD A-1-A) AS CONSTRUCTED AND MAINTAINED AND AS SHOWN ON THE FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD A-1-A TO THE EAST LINE OF DANIAN'S SOUTH, A CONDOMINIUM AS DESCRIBED IN OFFICIAL RECORDS BOOK 5959, PAGE 401 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG THE EAST LINE OF SAID DANIAN'S SOUTH, A CONDOMINIUM TO THE WESTERLY EXTENSION OF THE SOUTH LINE OF SEA OAKS, A CONDOMINIUM AS DESCRIBED IN OFFICIAL RECORDS BOOK 24180, PAGE 469 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING THE SOUTH LINE OF SEA OAKS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 127, PAGE 1 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE EASTERLY ALONG SAID WESTERLY EXTENSION AND ALONG THE SOUTH LINE OF SAID SEA OAKS, A CONDOMINIUM TO THE SOUTHEAST CORNER OF SAID SEA OAKS, A CONDOMINIUM, SAME BEING A POINT ON THE WEST RIGHT OF WAY LINE OF NE 7th AVENUE (GULFSTREAM ROAD); THENCE NORTHERLY ALONG THE EAST LINE OF SAID SEA OAKS, A CONDOMINIUM, SAME BEING SAID WEST RIGHT OF WAY LINE OF NE 7th AVENUE (GULFSTREAM ROAD) TO THE NORTHEAST CORNER OF SAID SEA OAKS, A CONDOMINIUM; THENCE EASTERLY ALONG THE WESTERLY EXTENSION OF THE NORTH LINE OF RODDY DANIA PLAT No. 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 102, PAGE 26 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA TO THE NORTHWEST CORNER OF SAID RODDY DANIA PLAT No. 1; THENCE SOUTHERLY ALONG THE WEST LINE AND THE SOUTHERLY EXTENSION THEREOF OF SAID RODDY DANIA PLAT No. 1 TO THE SOUTH RIGHT OF WAY LINE OF AFORESAID DANIA BEACH BOULEVARD (STATE ROAD A-1-A); THENCE WESTERLY ALONG SAID SOUTHERLY RIGHT OF WAY LINE TO THE WEST LINE OF HOLLYWOOD CENTRAL BEACH No. 3, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 10, PAGE 6 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG SAID WEST LINE TO THE NORTHWEST CORNER OF LOT 8, BLOCK 12 OF SAID HOLLYWOOD CENTRAL BEACH No. 3, SAME BEING A POINT ON THE SOUTH RIGHT OF WAY LINE OF BALBOA STREET (SE 1st STREET) AS SHOWN ON SAID PLAT; THENCE WESTERLY ALONG THE WESTERLY EXTENSION OF SAID SOUTH RIGHT OF WAY LINE OF SAID BALBOA STREET TO THE SOUTHEAST CORNER OF DANIA BEACHWAY PARK RESUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 26, PAGE 22 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG THE SOUTH LINE OF SAID PLAT, SAME BEING THE SOUTH RIGHT OF WAY LINE OF BALBOA STREET (SE 1st STREET) TO THE SOUTHWEST CORNER OF SAID PLAT; THENCE WESTERLY ALONG THE WESTERLY EXTENSION OF SAID SOUTH LINE OF SAID PLAT, SAME BEING THE WESTERLY EXTENSION OF BALBOA STREET (SE 1st STREET) AS SHOWN ON SAID PLAT TO THE NORTHEAST CORNER OF LOT 5, BLOCK 3, HOLLYWOOD MANORS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 11, PAGE 1 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON AFORESAID SOUTH RIGHT OF WAY

1

LINE OF BALBOA STREET (SE 1st STREET) AS SHOWN ON SAID PLAT; THENCE WESTERLY ALONG THE NORTH LINE OF BLOCK 3 OF SAID PLAT, SAME BEING SAID SOUTH RIGHT OF WAY LINE OF BALBOA STREET (SE 1st STREET) TO THE NORTHWEST CORNER OF LOT 1, BLOCK 3 OF SAID HOLLYWOOD MANORS; THENCE WESTERLY TO THE SOUTHEAST CORNER OF DANIA BEACH PLAZA, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 169, PAGE 32 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG THE SOUTH LINE OF SAID PLAT AND THE WESTERLY EXTENSION THEREOF TO THE WEST RIGHT OF WAY LINE OF SOUTHEAST 3rd AVENUE; THENCE NORTHERLY ALONG SAID WEST RIGHT OF WAY LINE TO THE NORTHEAST CORNER OF LOT 13, BLOCK 3, DANIA BEACH SUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 8, PAGE 1 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON THE SOUTH RIGHT OF WAY LINE OF SOUTHEAST PARK STREET; THENCE WESTERLY ALONG SAID SOUTH RIGHT OF WAY LINE OF SOUTHEAST PARK STREET TO THE EAST LINE OF ESKILSON ADDITION TO DANIA AMENDED, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 7, PAGE 10 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG SAID EAST LINE TO THE SOUTHWEST CORNER OF TRACT "A", DANIA DELMAR, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 73 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHEASTERLY TO THE NORTHEAST CORNER OF LOT 1, BLOCK 1, MASON SUBDIVISION AMENDED PLAT, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 19 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG THE EAST LINE OF LOTS 1 THROUGH 11 OF SAID BLOCK 1 AND THE SOUTHERLY EXTENSION THEREOF TO THE NORTHEAST CORNER OF LOT 1, BLOCK 3 OF SAID MASON SUBDIVISION AMENDED PLAT; THENCE SOUTHERLY ALONG THE EAST LINE OF LOTS 1 THROUGH 11 OF SAID BLOCK 3 TO THE SOUTHEAST CORNER OF LOT 11, BLOCK 3, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHEAST 2nd STREET; THENCE SOUTHERLY TO THE NORTHEAST CORNER OF LOT 4, BLOCK 1, AMENDED PLAT OF RAULERSON SUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 70 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON THE SOUTH RIGHT OF WAY LINE OF SOUTHEAST 2nd STREET; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID LOT 4 TO THE SOUTHEAST CORNER OF SAID LOT 4, BLOCK 1; THENCE WESTERLY ALONG THE SOUTH LINE OF SAID AMENDED PLAT OF RAULERSON SUBDIVISION TO THE EAST RIGHT OF WAY LINE OF FEDERAL HIGHWAY/STATE ROAD 5 (U.S. 1) AS SHOWN ON THE FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD 5; THENCE SOUTHERLY ALONG SAID EAST RIGHT OF WAY LINE TO THE NORTHWEST CORNER OF TRACT "A", LITO SQUARE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 166, PAGE 22 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE EASTERLY ALONG THE NORTH LINE OF SAID TRACT "A" TO THE NORTHEAST CORNER OF SAID TRACT "A"; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID TRACT "A" TO THE SOUTHEAST CORNER THEREOF; THENCE WESTRELY ALONG THE SOUTH LINE OF SAID TRACT "A" TO SAID EAST RIGHT OF WAY LINE OF FEDERAL HIGHWAY/STATE ROAD 5 (U.S. 1) AS SHOWN ON SAID FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD 5; THENCE SOUTHERLY ALONG SAID EAST RIGHT OF WAY LINE TO THE NORTH LINE OF LOT 2, LARSENS SUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 2, PAGE 75 OF THE PUBLIC RECORDS OF DADE COUNTY, FLORIDA; THENCE EASTERLY TO THE NORTHEAST CORNER OF SAID LOT 2; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID LARSENS SUBDIVISION TO THE SOUTHEAST CORNER OF LOT 14, SAME BEING THE NORTHWEST CORNER OF LOT 9, BLOCK 3, AMENDED PLAT OF HOLLYWOOD CENTER,

ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 9, PAGE 43 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 3, BLOCK 3 AND THE SOUTHERLY EXTENSION THEREOF TO THE NORTH LINE OF BLOCK 2 OF SAID AMENDED PLAT OF HOLLYWOOD CENTER, SAME BEING THE SOUTH RIGHT OF WAY LINE OF SOUTHEAST 4th STREET; THENCE WESTERLY ALONG SAID NORTH LINE OF BLOCK 2 TO THE NORTHWEST CORNER OF LOT 9 OF SAID BLOCK 2; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 9, BLOCK 2 AND ALONG THE WEST LINE OF LOT 10 OF SAID BLOCK 2 TO THE SOUTHWEST CORNER THEREOF, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHEAST 4th TERRACE; THENCE EASTERLY ALONG THE SOUTH LINE OF SAID BLOCK 2 TO A POINT OF INTERSECTION WITH THE NORTHERLY EXTENSION OF THE WEST LINE OF LOT 5, DANIA HIGHLANDS No. 2, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 90, PAGE 38 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG SAID NORTHERLY EXTENSION AND ALONG THE WEST LINES OF LOTS 5 AND 6 OF SAID DANIA HIGHLANDS No. 2 AND ALONG THE SOUTHERLY EXTENSION OF THE WEST LINE OF SAID LOT 6 TO THE SOUTH LINE OF THE LANDS IDENTIFIED AS TAX PARCEL No. 514203000220 BY THE BROWARD COUNTY PROPERTY APPRAISER'S OFFICE; THENCE EASTERLY ALONG THE SOUTH LINE OF SAID LANDS IDENTIFIED AS TAX PARCEL No. 514203000220 TO THE NORTHWEST CORNER OF THE LANDS IDENTIFIED AS TAX PARCEL No. 514203000200  BY THE BROWARD COUNTY PROPERTY APPRAISER'S OFFICE; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID TAX PARCEL No. 514203000200 TO THE SOUTHWEST CORNER OF SAID PARCEL, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHWEST 6th STREET; THENCE SOUTHERLY ALONG THE SOUTHERLY EXTENSION OF THE WEST LINE OF SAID TAX PARCEL No. 514203000200 TO THE NORTH LINE OF BLOCK 3, AMENDED PLAT OF SOUTH DANIA HEIGHTS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 6, PAGE 9 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON THE SOUTH RIGHT OF WAY LINE OF SAID SOUTHWEST 6th STREET; THENCE WESTERLY ALONG THE NORTH LINE OF SAID BLOCK 3 TO THE NORTHWEST CORNER OF LOT 10 OF SAID BLOCK 3; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 10, BLOCK 3 AND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 23, BLOCK 3 AND THE SOUTHERLY EXTENSION THEREOF TO THE SOUTH RIGHT OF WAY LINE OF SOUTHEAST 7th STREET; THENCE EASTERLY ALONG SAID SOUTH RIGHT OF WAY LINE OF SOUTHEAST 7th STREET TO THE  NORTHWEST CORNER OF LOT 6, FORREST HOMESITES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 36, PAGE 28 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 6 AND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 7 AND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 18 AND THE SOUTHERLY EXTENSION THEREOF OF SAID FORREST HOMESITES TO THE  NORTH LINE OF THE LANDS IDENTIFIED AS TAX PARCEL No. 514203000730 BY THE BROWARD COUNTY PROPERTY APPRAISER'S OFFICE; THENCE EASTERLY ALONG THE NORTH LINE OF SAID TAX PARCEL No. 514203000730 TO THE NORTHEAST CORNER THEREOF, SAME BEING THE NORTHWEST CORNER OF BERNARD VILLAGE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 169, PAGE 34 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID TAX PARCEL No. 514203000730 TO THE SOUTHEAST CORNER THEREOF, SAME BEING THE SOUTHWEST CORNER OF SAID BERNARD VILLAGE, SAME BEING A POINT ON THE NORTH LINE OF BLOCK C, HIGHLAND SQUARE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 7, PAGE 5 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG THE NORTH LINE OF SAID BLOCK C TO THE NORTHWEST CORNER OF LOT 4 OF SAID

3

BLOCK C; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 4, BLOCK C AND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE WEST LINES OF LOTS 8 and 7, BLOCK B ND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 4, BLOCK A F SAID HIGHLAND SQUARE PLAT TO THE NORTH LINE OF DIXIE WAY, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 12, PAGE 4 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG SAID NORTH LINE TO NORTHEAST CORNER OF LOT 4, BLOCK 1 OF SAID PLAT; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID LOT 4, BLOCK 1 AND THE SOUTHERLY EXTENSION THEREOF AND ALONG THE EAST LINE OF LOTS 23 and 8, BLOCK 2 TO THE SOUTHEAST CORNER OF SAID LOT 8, BLOCK 2 OF SAID PLAT, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHEAST 13th STREET; THENCE EASTERLY ALONG SAID NORTH RIGHT OF WAY LINE, SAME BEING THE SOUTH LINE OF SAID BLOCK 2 TO THE NORTHERLY EXTENSION OF THE WEST LINE OF LOT 16, BLOCK 3 OF SAID PLAT; THENCE SOUTHERLY ALONG SAID NORTHERLY EXTENSION AND ALONG THE WEST LINE OF SAID LOT 16, BLOCK 3 AND ALONG THE WEST LINE OF LOT 15, BLOCK 3  AND THE SOUTHERLY EXTENSION THEREOF TO THE SOUTH RIGHT OF WAY LINE OF SOUTHEAST 13th TERRACE, SAME BEING THE NORTH LINE OF BLOCK 4 OF SAID DIXIE WAY; THENCE WESTERLY ALONG SAID RIGHT OF WAY LINE AND ALONG SAID NORTH LINE OF BLOCK 4 TO THE NORTHEAST CORNER OF LOT 1, BLOCK 4 OF SAID DIXIE WAY PLAT; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID LOT 1, BLOCK 4 AND ALONG THE EAST LINES OF LOTS 2 and 3, BLOCK 4 OF SAID PLAT AND ALONG THE EAST LINE OF FANROSE PARK, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 36, PAGE 49 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, AND ALONG THE EAST LINE OF LOTS 2 AND 3, BLOCK 1, ST. JAMES PARK NORTH, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 3, PAGE 33 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA TO THE SOUTHEAST RNER OF SAID LOT 3, BLOCK 1 OF SAID ST. JAMES PARK NORTH; THENCE SOUTHERLY ONG THE SOUTHERLY EXTENSION OF THE EAST LINE OF SAID LOT 3, BLOCK 1 TO THE NORTHEAST CORNER OF LOT 1, BLOCK 2 OF SAID PLAT; THENCE SOUTHERLY ALONG THE EAST LINE OF SAID LOT 1, BLOCK 2 AND ALONG THE EAST LINES OF LOTS 2 THROUGH 6, BLOCK 2 OF SAID PLAT TO THE SOUTHEAST CORNER OF SAID LOT 6, BLOCK 2 OF SAID PLAT, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHEAST 15th STREET; THENCE EASTERLY ALONG THE SOUTH LINE OF BLOCK 2 OF SAID PLAT, SAME BEING SAID NORTH RIGHT OF WAY LINE TO THE SOUTHEAST CORNER OF LOT 23, BLOCK 2 OF SAID PLAT; THENCE SOUTHERLY ALONG THE SOUTHERLY EXTENSION OF THE EAST LINE OF SAID LOT 23, BLOCK 2 AND ALONG THE EAST LINE OF LOT 20, BLOCK 3 OF SAID PLAT TO THE NORTH RIGHT OF WAY LINE OF SHERIDAN STREET (STATE ROAD 822) AS SHOWN AS SHOWN ON THE FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD 822; THENCE WESTERLY ALONG SAID NORTH RIGHT OF WAY LINE TO THE WEST LINE OF LOT 8, BLOCK 43, NORTH HOLLYWOOD, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 4, PAGE 1 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG SAID WEST LINE OF LOT 8, BLOCK 43 AND ALONG THE WEST LINES OF LOT 13, BLOCK 43, LOTS 8 and 13, BLOCK 44, LOTS 8 and 13, BLOCK 45, LOTS 8 and 13, BLOCK 46, LOTS 8 and 13, BLOCK 47, LOTS 8 and 13, BLOCK 48 TO THE SOUTH RIGHT OF WAY LINE OF SOUTHWEST 10th STREET; THENCE WESTERLY ALONG SAID SOUTH RIGHT OF WAY LINE TO THE NORTHWEST CORNER OF LOT 20 OF SAID BLOCK 48; THENCE NORTHERLY ALONG THE NORTHERLY EXTENSION OF THE WEST LINE OF SAID LOT 20, BLOCK 48 TO THE SOUTHEASTERLY RIGHT OF WAY LINE OF DIXIE HIGHWAY; THENCE SOUTHWESTERLY NG SAID RIGHT OF WAY LINE TO THE NORTHERLYMOST NORTHWEST CORNER OF LOT 2, LOCK 21 OF SAID NORTH HOLLYWOOD; THENCE WESTERLY ALONG THE WESTERLY

EXTENSION OF THE NORTH LINE OF SAID LOT 2, BLOCK 21 TO THE NORTHWESTERLY RIGHT OF WAY LINE OF SAID DIXIE HIGHWAY; THENCE NORTHEASTERLY ALONG SAID RIGHT OF WAY LINE TO THE EAST LINE OF AMENDED PLAT OF WOODLAWN CEMETERY, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 15, PAGE 18 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG SAID EAST LINE OF SAID PLAT TO THE SOUTH LINE OF LOT 9, BLOCK 1, AMENDED PLAT OF WOODHAVEN, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 10, PAGE 56 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG SAID SOUTH LINE TO THE SOUTHWEST CORNER OF SAID LOT 9, BLOCK 1 OF SAID PLAT; THENCE NORTHEASTERLY ALONG THE NORTHWEST LINE OF SAID BLOCK 1 TO THE NORTH CORNER OF LOT 18, BLOCK 1 OF SAID PLAT, SAME BEING A POINT ON THE WEST RIGHT OF WAY LINE OF SOUTHWEST 2nd AVENUE; THENCE NORTHERLY ALONG SAID WEST RIGHT OF WAY LINE AND ALONG THE EAST LINE OF LOT 13, BLOCK 3 AND THE NORTHERLY EXTENSION THEREOF AND ALONG THE EAST LINE OF LOT 13, BLOCK 4 OF SAID PLAT TO THE WESTERLY EXTENSION OF THE SOUTH LINE OF BLOCK 3, DANIA HEIGHTS EXTENSION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 5, PAGE 19 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE EASTERLY ALONG SAID WESTERLY EXTENSION AND ALONG SAID SOUTH LINE OF BLOCK 3 TO THE SOUTHWEST CORNER OF LOT 6, BLOCK 3 OF SAID PLAT; THENCE NORTHERLY ALONG THE WEST LINE OF SAID LOT 6, BLOCK 3 AND THE NORTHERLY EXTENSION THEREOF TO THE SOUTH LINE OF BLOCK 2 OF SAID PLAT; THENCE EASTERLY ALONG SAID SOUTH LINE OF BLOCK 2 TO THE SOUTHWEST CORNER OF LOT 7, BLOCK 2 OF SIAD PLAT; THENCE NORTHERLY ALONG THE WEST LINE OF SAID LOT 7, BLOCK 2 AND THE NORTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 26, BLOCK 2 AND THE NORTHERLY EXTENSION THEREOF AND ALONG THE WEST LINE OF LOT 4, BLOCK 1 AND THE NORTHERLY EXTENSION THEREOF TO THE SOUTHWEST CORNER OF LOT 4, BLOCK 3, DANIA HEIGHTS, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 3, PAGE 22 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE CONTINUE NORTHERLY ALONG THE WEST LINE OF SAID LOT 4, BLOCK 3 AND ALONG THE WEST LINES OF LOTS 7 and 26, BLOCK 2 AND ALONG THE WEST LINE OF LOT 4, BLOCK 1 OF SAID PLAT TO THE NORTHWEST CORNER OF SAID LOT 4, BLOCK 1; THENCE WESTERLY ALONG THE NORTH LINE OF SAID BLOCK 1 TO THE SOUTHERLY EXTENSION OF THE EAST LINE OF BLOCK 1, MODELO PARK, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 14, PAGE 10 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG SAID SOUTHERLY EXTENSION AND ALONG THE EAST LINE OF BLOCK 1 OF SAID PLAT TO THE SOUTH LINE OF BLOCK B, AMENDED PLAT OF PARK HILL, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK D 3, PAGE 16 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF SOUTHWEST 3rd STREET; THENCE EASTERLY ALONG SAID SOUTH LINE OF BLOCK B TO THE SOUTHEAST CORNER THEREOF; THENCE NORTHERLY ALONG THE EAST LINE OF SAID BLOCK B, SAME BEING THE WEST RIGHT OF WAY LINE OF SOUTHWEST 1st AVENUE TO THE SOUTH RIGHT OF WAY LINE OF STIRLING ROAD (STATE ROAD 848) AS SHOWN ON THE FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD 828; THENCE WESTERLY ALONG SAID SOUTH RIGHT OF WAY LINE TO WEST RIGHT OF WAY LINE OF THE FLORIDA EAST COAST RAILROAD; THENCE NORTHEASTERLY ALONG SAID WEST RIGHT OF WAY LINE TO THE SOUTH RIGHT OF WAY LINE OF SOUTHWEST 1st STREET; THENCE WESTERLY ALONG SAID RIGHT OF WAY LINE TO THE SOUTHERLY EXTENSION OF THE EAST LINE OF BLOCK 20, TOWN OF DANIA, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK B, PAGE 9 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING THE WEST RIGHT

5

OF WAY LINE OF SOUTHWEST 4th AVENUE; THENCE NORTHERLY ALONG SAID SOUTHERLY EXTENSION AND ALONG THE EAST LINE OF SAID BLOCK 20 TO THE SOUTHEAST CORNER OF LOT 4, BLOCK 20 OF SAID PLAT; THENCE WESTERLY ALONG THE SOUTH LINE OF SAID LOT 4, BLOCK 20 AND ALONG THE SOUTH LINES OF LOT 3, BLOCK 20, LOTS 4 and 3, BLOCK 19 , LOTS 4 and 3, BLOCK 18 AND ALONG THE WESTERLY EXTENSION OF THE SOUTH LINE OF LOT 3, BLOCK 18 TO THE WEST RIGHT OF WAY LINE OF SOUTHWEST 7th AVENUE; THENCE NORTHERLY ALONG SAID RIGHT OF WAY LINE TO THE SOUTHEAST CORNER OF LOT  1, SARATOGA, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 18, PAGE 23 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE WESTERLY ALONG THE SOUTH LINE OF SAID LOT TO THE SOUTHWEST CORNER THEREOF; THENCE NORTHERLY ALONG THE WEST LINE OF SAID LOT TO THE NORTHWEST CORNER THEREOF, SAME BEING A POINT ON THE SOUTH RIGHT OF WAY LINE OF NORTHWEST 1st STREET; THENCE WESTERLY ALONG SAID RIGHT OF WAY LINE TO THE WEST RIGHT OF WAY LINE OF NORTHWEST 8th AVENUE; THENCE NORTHEASTERLY ALONG SAID RIGHT OF WAY LINE TO THE SOUTH RIGHT OF WAY OF NORTHWEST 2nd STREET; THENCE WESTERLY ALONG SAID RIGHT OF WAY LINE TO THE SOUTHERLY EXTENSION OF THE WEST RIGHT OF WAY LINE OF NORTHWEST 9th AVENUE; THENCE NORTHERLY ALONG SAID RIGHT OF WAY LINE TO THE WESTERLY EXTENSION OF THE NORTH RIGHT OF WAY LINE OF NORTHWEST 3rd STREET; THENCE EASTERLY ALONG SAID RIGHT OF WAY LINE TO THE WEST LINE OF DANIA MANOR, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 10, PAGE 53 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG SAID WEST LINE AND THE NORTHERLY EXTENSION THEREOF TO THE SOUTH LINE OF MELALEUCA GARDENS RESUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 25, PAGE 10 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, SAME BEING A POINT ON THE NORTH RIGHT OF WAY LINE OF THE DANIA CUTOFF CANAL; THENCE EASTERLY ALONG SAID SOUTH LINE, SAME BEING SAID NORTH RIGHT OF WAY LINE TO THE SOUTHEAST CORNER OF SAID PLAT; THENCE NORTHERLY ALONG THE EAST LINE OF SAID PLAT TO THE WESTERLY EXTENSION OF THE NORTH LINE OF AIRPORT 10, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 134, PAGE 4 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE EASTERLY ALONG THE NORTH LINE OF SAID PLAT TO THE WEST RIGHT OF WAY LINE OF AFORESAID FEDERAL HIGHWAY/STATE ROAD 5 (U.S. 1) AS SHOWN ON AFORESAID FLORIDA DEPARTMENT OF TRANSPORTATION RIGHT OF WAY MAP FOR SAID STATE ROAD 5; THENCE NORTHERLY ALONG SAID RIGHT OF WAY LINE TO ITS INTERSECTION WITH THE SOUTHWESTERLY CLEAR ZONE LIMITS FOR RUNWAY 31 AS SHOWN ON THE RITA W. SHAW PLAT, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 146, PAGE 25 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE SOUTHEASTERLY ALONG SAID SOUTHWESTERLY CLEAR ZONE LIMITS FOR RUNWAY 31 TO THE EASTERLY CLEAR ZONE LIMITS FOR RUNWAY 31 AS SHOWN ON SAID PLAT; THENCE NORTHEASTERLY ALONG SAID EASTERLY CLEAR ZONE LIMITS FOR RUNWAY 31 TO THE NORTH LINE OF SAID THE RITA W. SHAW PLAT; THENCE EASTERLY ALONG SAID NORTH LINE OF SAID PLAT AND THE EASTERLY EXTENSION THEREOF TO THE WEST LINE OF THE C.I.B.D. PLAT, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 140, PAGE 28 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA; THENCE NORTHERLY ALONG THE WEST LINE OF SAID PLAT TO THE NORTH LINE OF AFORESAID SECTION 34, TOWNSHIP 50 SOUTH, RANGE 42 EAST; THENCE EASTERLY ALONG SAID NORTH LINE TO THE POINT OF BEGINNING.

ALL LANDS LYING IN THE CITY OF DANIA BEACH, BROWARD COUNTY, FLORIDA.



Future
Land Use Map

Figure 3

**Form W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

DANIA BEACH COMMUNITY REDEVELOPMENT AGENCY

**2** Business name/disregarded entity name, if different from above

COMMUNITY REDEVELOPMENT AGENCY

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC   ☑ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner.  Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

100 W DANIA BEACH BLVD

**6** City, state, and ZIP code

DANIA BEACH FL 33004

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type.*
*See Specific Instructions on page 3.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**or**

**Employer identification number**

| 2 | 7 | – | 1 | 8 | 1 | 0 | 2 | 9 | 9 |

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**   Signature of U.S. person ▶   Tania Stevens   *Digitally signed by Tania Stevens DN: cn=Tania Stevens, o=City of Dania Beach, ou=Finance, email=tstevens@daniabeachfl.gov, Date: 2022.01.24 09:44:20 -05'00'*

Date ▶   01/01/2022

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)

**EXHIBIT 2**



Dear Ms. Bryan,                                                                                     June 11, 2021

As the Executive Director to the CRA, I have evaluated the organizational structure, and have made a decision to eliminate your position, which you currently hold as a probationary employee.

This letter is to advise you of this decision.  Your position will be eliminated effective today, June 11, 2021.

Your health insurance benefits will continue until the end of the month on June 30, and you will be paid out for any sick and vacation time that you have banked.

Should you have any additional questions, please feel free to contact Human Resources.

I wish you the very best in your future career endeavors.

Sincerely,

Michael Chen



K. Michael Chen

**CRA Executive Director**

Community Redevelopment Agency

**City of Dania Beach**

100 W Dania Beach Blvd, Dania Beach, 33004

www.DaniaBeachCRA.org

t: 954-924-6801 x3732

mchen@daniabeachfl.gov

**EXHIBIT 3**

NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MURIEL BRYAN,

     Plaintiff,

vs.                         Case No.

CITY OF DANIA BEACH

     Defendants.

_____/

## **COMPLAINT**

Plaintiff, MURIEL BRYAN ("Plaintiff"), by and through the undersigned counsel, hereby

sues Defendant, CITY OF DANIA BEACH ("Defendant") and alleges as follows:

1.   This is an action for discrimination based upon Plaintiff's disability and status as a pregnant

female pursuant to the Pregnancy Discrimination Act ("PDA"), as incorporated into Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) ("Title VII"), and the Florida Civil Rights Act

of 1992, Florida Statutes, Chapter 760 ("FCRA"), and the Family Medical Leave Act.

2.   Plaintiff claims damages in excess of $30,000.

3.   Plaintiff is a resident of Broward County, Florida, within the jurisdiction of this Honorable

Court.

4.   Defendants are a government entity authorized to conduct business in Broward County,

Florida, where Plaintiff worked for Defendant.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

5.   On or about May 27, 2021, Plaintiff had a doctor's appointment where she was told she

was pregnant.

Case 0:22-cv-62361-JEM Document 1-2 Entered on FLSD Docket 12/16/2022 Page 92 of 97

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

      **I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>  JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u>  COUNTY, FLORIDA

<u>MURIEL BRYAN</u>
 Plaintiff                                Case # _____
                                            Judge _____

vs.
<u>CITY OF DANIA BEACH</u>
 Defendant

      **II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

      **III.    TYPE OF CASE**    (If the case fits more than one type of case,  select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA**

Case No: Case 22-9793

*Muriel Bryan*
Plaintiff

Judge Division: 25

VS

*City of Dania Beach*
Defendant

FILED
JUL 06 2022
By

**CLERK'S CERTIFICATE OF COMPLIANCE**

I hereby certify that pursuant to Administrative Order, No. 2020-73Civ/2020-74-UFC: "ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO DISMISSED CIVIL OR FAMILY CASES",

The Clerk has conducted a search for all previous existing civil cases related to these two parties.

Listed below are all the aforementioned related cases:

*None*

Brenda D. Forman
Circuit and County Courts

By: J. Caliste
Deputy Clerk

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MURIEL BRYAN,

     Plaintiff,

vs.                           Case No. 22-CA-009793

CITY OF DANIA BEACH

     Defendant(s).

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on Defendant:

### CITY OF DANIA BEACH C/O:

### Mayor Tamara James

### 100 W Dania Beach Boulevard

### Dania Beach, FL 33044

     Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, whose address is:

     Abrams Law Firm, P.A. c/o Rainier Regueiro, Esq.

     888 SE 3rd Ave, Suite 400

     Fort Lauderdale, FL 33316

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on the Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

21-586/aga/trt

**IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: 22-CA-009793**

MURIEL BRYAN,

        Plaintiff,

vs.

CITY OF DANIA BEACH,

        Defendant.

_____/

### DEFENDANT, CITY OF DANIA BEACH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND, ALTERNATIVELY, TO STRIKE CLAIMS FOR PREJUDGMENT INTEREST

        COMES NOW Defendant CITY OF DANIA BEACH (the "City"), by and through the undersigned counsel, hereby moves this Court for entry of an order dismissing Plaintiff's, MURIEL BRYAN ("Bryan") Complaint, and, alternatively, to strike Plaintiff's claims for prejudgment interest and, in support thereof, states as follows:

### INTRODUCTION

        On July 5, 2022, Plaintiff filed her Complaint against the City wherein she attempts to assert claims for discrimination based on her purported "disability and status as a pregnant female" pursuant to the Pregnancy Discrimination Act ("PDA") as incorporated into Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA") and the Family Medical Leave Act ("FMLA"). *Exhibit A, Complaint.*

        As argued in greater detail below, Plaintiff's Complaint should be dismissed with prejudice and City should be dismissed as a party defendant because Plaintiff was not an employee of the

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 09/02/2022 04:06:15 PM.****

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MURIEL BRYAN,

      Plaintiff,

vs.                             Case No. CACE-22-009793

CITY OF DANIA BEACH and,
DANIA BEACH COMMUNITY
REDEVELOPMENT AGENCY

      Defendants.
_____/

## FIRST AMENDED COMPLAINT

      Plaintiff, MURIEL BRYAN ("Plaintiff"), by and through the undersigned counsel, hereby

sues Defendant, CITY OF DANIA BEACH ("Defendant") and DANIA BEACH COMMUNITY

REDEVELOPMENT AGENCY and alleges as follows:

      1.  This is an action for discrimination based upon Plaintiff's disability and status as a pregnant

female pursuant to the Pregnancy Discrimination Act ("PDA"), as incorporated into Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) ("Title VII"), and the Florida Civil Rights Act

of 1992, Florida Statutes, Chapter 760 ("FCRA"), and the Family Medical Leave Act.

      2.  Plaintiff claims damages in excess of $30,000.

      3.  Plaintiff is a resident of Broward County, Florida, within the jurisdiction of this Honorable

Court.

      4.  Defendants are government entities authorized to conduct business in Broward County,

Florida, where Plaintiff worked for Defendants.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:  **CACE22009793**

JUDGE:  **Phillips, Carol-Lisa (25)**

**Muriel Bryan**
Plaintiff(s),

vs.

**City Of Dania Beach**
Defendant(s).

_____/

UNIFORM CASE MANAGEMENT ORDER:

**ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY**

In accordance with Florida Rule Civil Procedure 1.200, and the Supreme Court AO20-23,
Amendment 10, the Court hereby orders a MANDATORY Case Management Conference to be
held in Courtroom      Zoom: https://17thflcourts.zoom.us/j/975531891      on      12-14-2022 8:45
AM    .

All counsel and any self-represented parties MUST appear at the hearing and have their calendars
to schedule future matters. This hearing may be canceled: (1) If the parties set the matter for trial
prior to the case management conference date; (2) If the action is settled and a Final Order of
Dismissal is issued; or (3) The action is dismissed.

1. If your case is:
   Streamlined: Projected date of Trial within 12 months of case filing.
   General Civil: Projected date of Trial within 18 months of case filing.
   Complex: Projected date of Trial within 24 months of case filing.

2. COMPLAINT: The Complaint shall be served within 120 days of filing. Failure to perfect
   service within 120 days shall subject the action to dismissal without prejudice or dropping of
   that party as a defendant. If plaintiff shows good cause or excusable neglect for failure to
   serve within 120 days, the court shall extend the time for service for an appropriate period.
   (Rule 1.070, Fla.R.Civ.P.)

3. TRIAL: The Uniform Trial Order will be issued, when the case is at issue pursuant to Florida
   Rules of Civil Procedure, 1.440.

4. DISCOVERY DEADLINES: Deadlines for Witness Lists, Compulsory Medical
   Examinations, Discovery, Motions, Exhibit Lists, Daubert Challenges, Jury Instructions, and
   Mediation are specifically detailed in the Uniform Trial Order.

THE UNIFORM TRIAL DATE IS A FIRM TRIAL DATE AND DEADLINES WILL
BE STRICTLY ENFORCED BY THE COURT. STRICT COMPLIANCE MEANS